### MISSISSIPPI POWER & LIGHT CO. v. GRIFFIN.

#### No. 7816.

Circuit Court of Appeals, Fifth Circuit.

Jan. 29, 1936.

Marcellus Green, Garner Wynn Green, Forrest B. Jackson, and A. M. Nelson, all of Jackson, Miss., and Cowles Horton, of Grenada, Miss., for appellant.

W. 1. Stone, of Coffeeville, Miss., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee to recover damages for personal injuries which were attributed to negligence of appellant, Mississippi Power & Light Company, in so erecting and maintaining, beneath and attached to a suspended platform in appellant's power house in the town of Coffeeville, Miss., electric current transformers as to leave uninsulated part of a threaded metal bolt which was connected with wires heavily charged with electricity; the uninsulated part ·of that bolt being about 16 inches from an electric light bulb which was used by the appellee, an employee of the town of Coffeeville, in performing his duties of attending to that town's water pump, which was operated by means of a motor located on the floor of appellant's power house beneath the above-mentioned platform. The appellant pleaded the general issue. In the trial there was evidence to the following effect: Formerly the town of Coffeeville owned and operated electric power and water systems installed in its power house. In 1927 the town sold its electric power system and its power house to the appellant. Thereafter the electric power used by the appellant was transmitted from Grenada, Miss.,

but it continued to use the power house for its transformers and for current furnished for service of the town and its inhabitants, and the town continued to use, for pumping water from a well near the power house, pumps which were located in the power house. When appellant became the owner of the power house there was a platform suspended from the joists which supported the roof, the bottom of that platform being about 6½ feet above the concrete floor. The above-mentioned pumps were located on the floor beneath the platform. On the underside of that platform, above the town's pumps, the town's employees installed a screw electric light bulb for use in operating its pumps, whereby light was put on and off by turning the bulb. On that platform were transformers of the appellant by means of which high-voltage electric current coming into the building from the outside was reduced, and beneath the platform and attached to it were transformers by means of which the 2,300-volt current coming from above the platform through porcelain tubes was reduced to 220 and 110 volts. A wire which came to the underside of the platform through a porcelain tube turned to the right at right angles and went about 14 inches to where it was fastened to the arm of a transformer by a metal bolt and nut. That bolt was covered by insulating tape, except that the tape did not cover the end of the bolt. One could see that the end of the bolt was not covered by the insulating tape. The exposed part of that bolt was about 16 inches from the above-mentioned screw electric light bulb. The appellee had been familiar with the above-mentioned situation for about three years prior to August 12, 1933. On August 11, 1933, an electric storm burned out one of the town's electric motors. On August 12, 1933, the town's employees borrowed from appellant another motor. About 10 o'clock that night, the appellee, an employee of the town who attended to the water pump— "all the electric parts concerning the pump" being his job, which he had held since the time appellant acquired the power house— placed the borrowed motor so it would run to the pump with a belt and started the motor to running. Then appellee turned off the light and left the building. Just after appellee got outside the power house he discovered that the pumping was not at full stream, whereupon he went back into the building, where, as stated by himself, "it was real dark," and, without strik-

ing a match or using a flashlight, he undertook "to walk inside about eight or ten feet and reach up and screw the globe so as to get a light," and in doing so his left hand came in contact with a high electric current, whereby he was shocked and injured. Light in the building could have been obtained by using a drop light which was located about ten feet farther from the door than the screw bulb light under the platform. The following appears in the cross-examination of the appellee:

"Q. You were careful not to touch that wire. A. I didn't touch it.

"Q. I say, you knew it was there and was careful not to touch it. A. Well, I was careful about any wire that—didn't touch any wire that I didn't have to touch.

"Q. You knew it was there within sixteen inches of this screw globe? A. Well, I suppose I had seen it there a good many times, but I just thought—didn't have any idea anybody would leave as dangerous wire as that within reach of anybody, so far as that is concerned."

Upon the appellee stating that he had a key to the power house, he was asked, "And kept it locked?" Appellee did not answer that question. Upon the conclusion of the evidence introduced by the appellee counsel for the appellant moved that a verdict in its favor be directed. Remarks made by the presiding judge in connection with his denial of that motion indicated that he was of opinion that appellee was entitled to recover, but that the amount of the recovery should be diminished because of appellee's contributory negligence. Thereupon counsel for appellant stated that appellant rested, and renewed the motion for a directed verdict in favor of appellant. The court denied that motion, and instructed the jury to find a verdict in favor of appellee, but to reduce the amount of the recovery because of the contributory negligence of the appellee.

The appellee was not an employee of the appellant. The arrangement under which the town of Coffeeville and its employees made use of space in appellant's power house is not disclosed; but it appears that appellee an employee of the town, in entering appellant's power house and operating the town's pumps located therein, was a licensee. The question whether the appellant's act or omission in permitting the uninsulated end of the heavily charged bolt to be and remain where it was constituted such a breach of duty owing by appellant to appellee as to make the appellant liable to appellee for negligence causing injury to the latter depends upon the circumstances attending that conduct. The facts that the uninsulated end of the bolt was at a place where no one was likely to have occasion to be near it, except appellant's own employees and employees of the town engaged in operating its pump, and that such employees reasonably might be expected to be aware of the danger of the place known to be the location of wires heavily charged with electricity, were circumstances having a bearing upon the question whether appellant did or did not breach a duty to the appellee in permitting the uninsulated end of the bolt to be where it was. It fairly was to be inferred from the evidence that the place where the uninsulated end of the bolt was located was not open to the public. There was nothing to indicate that appellant had any reason to anticipate that appellee or any employee of the town, other than one charged with the care or operation of the town's pumps, would have any occasion to have any part of his person in dangerous proximity to the uninsulated end of the bolt; nor was there anything to indicate that appellant had any reason to anticipate that any such employee of the town would be unaware of the danger of a place, near his place of work, at which wires heavily charged with electricity were assembled, or that such an employee of the town would fail to pay reasonable attention to his surroundings at the place where the town's pumps were located, or would in the dark grope with his hand about the underside of an overhead platform to which he knew was attached a transformer connected with a wire or wires heavily charged with electricity. Evidence supported a finding that appellee was aware of the location of the uninsulated end of the bolt and of the danger therefrom. The jury was not bound to accept as true the testimony of the appellee, an interested witness. Wheeler v. United States (C.C.A.) 80 F.(2d) 678 (December 17, 1935). Evidence supported a finding that appellant had no reason to believe that appellee, or any employee of the town having charge of the operation of its pumps, would, in the performance of his duties, be in any danger by reason of the uninsulated end of the bolt being allowed to remain where it was. Under the evidence it was permissible for the jury to find that appellant was entitled to assume that an employee of the town hav-

ing charge of the operation of the town's pumps would be familiar with the situation at the place of his work and would pay reasonable attention to his surroundings, and that, as to the appellee, a licensee, who, as appeared from evidence, was aware of the location of the uninsulated end of the bolt and of the danger therefrom, the appellant was not chargeable with negligence in permitting that possible source of danger to be and remain where it was. To say the least, it was a question for the jury whether appellant was or was not chargeable, in favor of the appellee, with negligence in that regard.

The relation of appellee to appellant was that of a licensee to the proprietor of premises on which injury to the appellee was sustained. The appellant as such proprietor was liable to appellee only for injury occasioned to the latter by an unsafe condition negligently suffered by the former to exist on its premises, if the appellee was exercising due care when he was injured, and if such unsafe condition was known to appellant, and not known to appellee. The ground of the proprietor's liability is his superior knowledge of the dangerous condition on his premises and the peril therefrom to persons permitted to go upon such premises. The proprietor is not liable for an injury from a danger as well known to the injured licensee as to the proprietor of the premises on which the injury occurred. Bennett v. Louisville & N. Railroad Co., 102 U.S. 577, 580, 26 L. Ed. 235; Daniel v. Jackson Infirmary (Miss.) 163 So. 447; Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213, 26 L.R.A. 686, 48 Am.St.Rep. 547; 20 R.C.L. 57; 45 C.J. 801. "A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein." Restatement of the Law of Torts, § 340: "The licensee is, therefore, entitled to nothing more than knowledge of the actual conditions, which he will encounter if he avails himself of the possessor's consent. If he knows the actual conditions, he has an opportunity to exercise an intelligent choice as to whether the advantage to be gained from his entry is sufficient to justify him in incurring the risk which he knows is inseparable from it." Ib. Comment e.

As there was evidence tending to prove that the dangerous condition to which his injury was attributed was known to the appellee, and that appellee was not exercising due care when he was injured, the action of the court in instructing the jury to find a verdict in favor of appellee was erroneous. The evidence was such as to make the question of the appellee's right to recover one for the jury.

The judgment is reversed.