NORRIS, Appellant, v. CHICAGO, M., ST. P. & P. R. CO.,
Respondent

(51 N. W.2d 792)

(File No. 9185. Opinion filed February 18, 1952)

**Max Royhl, Boyd M. Benson,** Huron, for Plaintiff and Appellant.

**Dwight Campbell,** Aberdeen, for Defendant and Respondent.

ROBERTS, J. This is an action to recover for personal injuries sustained by plaintiff at the station of defendant railroad company in Wolsey, Beadle county, this state. The accident occurred in the late evening of May 27, 1949. Plaintiff who was a carrier of passengers and mail between Huron and Wolsey and had been so engaged for a considerable time met all passenger trains arriving at and departing from defendant's station at Wolsey. He operated a Chevrolet carryall to which he hitched a two-wheel trailer for hauling mail. The mail between the trains of defendant company and the post office and the station of the Chicago & North Western Railway Company in Wolsey was handled by Melbourne Scheibe in a ton and a half Studebaker truck upon which was mounted a box about 16 feet long, 8 feet wide and 2 feet high. At about eight o'clock on the evening in question and at about the time a passenger train was due from the south, plaintiff accompanied by his wife arrived at defendant's station in Wolsey. He left the outbound mail on a station truck in the freight house and then disconnected the trailer at the east edge of the platform at a point about thirty feet south of the depot. They drove to a cafe a few blocks away. On returning to the station the headlights of the car swept the station platform south of the depot when plaintiff turned to back up to and hitch the trailer and according to plaintiff he saw no truck parked on the platform. Plaintiff and his wife were presently joined by Clyde Schartz. They tried to get a report of a ball game over the radio, but were not successful because of static. According to the testimony of the three occupants of the car there was no light in the depot or on the station grounds and they did not see or hear Scheibe back his truck to the point where the accident occurred. Plaintiff's testimony was that about 8:40 p. m. he saw a light to the southeast and when he got out of the car to determine whether it was the headlight of the train or of a car on the paralleling highway he felt his way along the trailer to the platform. The darkness was so

dense that he could not have seen the truck if he had been looking directly toward it. When he undertook to step up onto the platform, he struck his shoulder violently against a rear corner of the Scheibe truck which was about a foot from the trailer. A verdict was rendered for plaintiff. Defendant's motion for judgment notwithstanding the verdict was granted and judgment in conformity therewith was entered. Plaintiff appeals.

Plaintiff contends that a common carrier is under the duty to keep its station platform and approaches safe for the use of invitees and this duty includes proper lighting of the station grounds at night for the breach of which the carrier may be found guilty of negligence; and that the jury could reasonably have found from the evidence that plaintiff was an invitee upon defendant's premises and that defendant was negligent in failing to keep its platform free of obstacles and so lighted as to enable plaintiff to avoid injury.

■ There appears to be no dispute between the parties as to plaintiff's status at the time he was injured. He was an invitee or business visitor. No citations of authority are required in support of the well established principles that the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for the breach of such duty. This, however, is the extent of such duty. The possessor of land is not an insurer as too the safe condition of the premises. It is necessary that it be established that the possessor had knowledge of the presence of the dangerous condition of his premises or that the condition existed for such a period of time as to justify the inference that he had knowledge of its existence. A possessor of land is not required to anticipate or foresee that some third party may intervene in an existing condition and cause an injury to an invitee.

■ It may first be observed that Scheibe was not an employee of the defendant and defendant was not chargeable with negligence under the doctrine of respondeat superior. As we have indicated plaintiff's theory of liability and of his right to recovery is that defendant knew that it was the custom of Scheibe to drive his truck on the station platform to handle mail to and from trains and that the

accidental injury to plaintiff was one that might have been reasonably foreseen. It is argued that the injury was the ordinary or probable consequence of the failure of the defendant to keep the truck off the station platform and to properly light the station grounds and that it was not necessary to prove that defendant knew of the location of the truck at the time of the accident or that Scheibe had there parked his truck on prior occasions. Defendant insists that plaintiff's knowledge of the alleged danger at least equalled that of the defendant and that the rule of liability to invited persons can have no application. The rule is thus stated in 38 Am.Jur., Negligence, § 97: "The liability of an owner or occupant to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or in failing to warn him of dangers thereon, must be predicated upon a · superior knowledge concerning the dangers of the premises to persons going thereon. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." The possessor of land, said the court in Bennett v. Louisville and N. R. R. Co., 102 U. S. 577, 26 L.Ed. 235, is liable to invitees for injuries "occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation." Application of the principle is illustrated by the following cases: Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 118 S.W.2d 213; St. Louis-San Francisco Ry. Co. v. Gilbert, 185 Okl. 591, 95 P.2d 123; Mississippi Power & Light Co. v. Griffin, 5 Cir., 1936, 81 F.2d 292; Texas & P. Ry. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857; Stoll v. First Nat. Bank of Independence, 345 Mo. 582, 134 S.W. 2d 97; Texas Company v. Washington B. & A. Electric R. Co., 147 Md. 167, 127 A. 752, 40 A.L.R. 495.

Evidence given by plaintiff in substantiation of his claim includes the following:

"Q. Did Scheibe customarily drive onto the platform

to load the mail, drive his truck onto the platform? A. Yes, he did.

"Q. What time would he drive on the platform as an ordinary thing? A. You mean for this train 123?

"Q. Did he drive it on before the train arrived? A. Yes.

"Q. Or at the time the train arrived? A. He usually drove it on when he first came up to the depot and left it parked.

"Q. Where did he leave it parked? A. Toward the north end usually.

"Q. North of the depot? A. That's right. * * *

"Q. He usually came on from the north? A. That's right.

"Q. And then did he back down? A. He does. * * *

"Q. This night that you got out of your car did you have any expectation he would be parked down on the south end? A. No.

"Q. Did you have any reason to think he would be parked there? A. None at all, didn't know there was anyone around the depot.

"Q. How long have you carried mail, passengers and baggage around there? A. Since July 1, 1942.

"Q. How long has Scheibe? A. I think he took the contract in November 1947.

"Q. Has he been driving on the platform during all that time since then? A. Most of the time, yes, practically all the time."

On cross-examination plaintiff testified:

"Q. Now you found the Scheibe truck parked along substantially that same position before? A. I have seen it parked various places on the platform, yes.

"Q. And you have seen it parked substantially where it was that night? A. Not so much there as the north end, usually parked at the north end.

"Q. But you have seen it parked down there about opposite where the mail car door is? A. When the train comes in he usually backs to the mail car.

"Q. You have seen it there before the train comes in? A. I have seen it on the south end for southbound trains.

"By Mr. Benson: Talk about northbound trains Art, that's what we are talking about.

"A. I have seen it parked various places on the platform, yes. * * *

"Q. You knew that Mr. Scheibe often parked his truck in that general vicinity before the train arrived? A. He quite often parked it on the north end.

"Q. You knew he quite often parked it in the vicinity where you collided with it before the train arrived, didn't 'you? A. He usually backed it up to where the mail car stopped.

"Q. He had parked it down there in the vicinity where you collided with it before arrival of the train on many previous occasions hadn't he? A. Yes, I think he had on a few occasions. * * *

"Q. And you testified recently did you not that Scheibe usually meets train 123 and that when he does meet it his truck is usually somewhere on the station platform? A. That's right.

"Q. And you testified did you not that his truck might be most anyplace on the platform? A. That's right.

"Q. And that you wouldn't undertake to predict where on the platform it might be? A. That's right.

"Q. And that you had previously seen it parked on the platform before arrival of the train at about the point where you ran into it? A. That's right."

On redirect examination, plaintiff testified:

"Q. I will ask you now Mr. Norris if the Scheibe truck was on the platform on the south part of the platform, south of the depot, in Wolsey before the train pulled in on most occasions? A. No, it was not.

"Q. Was it there very often on the south part of the platform south of the depot? A. Just once in a great while usually."

 It is when the unsafe condition or attendant dangers as we have observed are known to the possessor of land and not known to the person injured that recovery is permitted. Plaintiff, according to his own testimony, had gone daily to the premises of the defendant to meet this train arriving in the evening and was familiar with the

practices thereon to which his injury was attributed. Plaintiff argues that defendant knew that it was the custom of Scheibe to drive his truck on the station platform and that such knowledge was of a character that would cause an ordinarily prudent person to foresee that harm would likely result. He says that he, on the other hand, had no reason to anticipate that Scheibe might park his truck south of the depot before the arrival of the train. When he returned to the station about twenty minutes before the accident, his headlights enabled him to observe that no truck was parked in the area. It is apparent from plaintiff's testimony that he knew that is was the practice of Scheibe to park his truck on the station platform including the area south of the depot. Taking as true the testimony that the truck was not parked at the scene of the accident when plaintiff returned to the station, we think that he was chargeable with knowledge that the truck might be parked there anytime prior to arrival of the train. Plaintiff's knowledge of the attendant dangers at least equalled that of the defendant and hence it cannot be said that such conditions were known to the inviter and unknown to the invitee. We believe the trial court reached the right conclusion from the evidence.

The judgment therefore is affirmed.

All the Judges concur.