Grace W. EWING, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 895 W.D.

United States District Court
D. South Dakota, W. D.

Aug. 6, 1964.

Clinton G. Richards, of Hayes & Richards, Deadwood, S. D., for plaintiff.

Harold C. Doyle, U. S. Atty., and Travis Lewin, Asst. U. S. Atty., Sioux Falls, S. D., for defendant.

BECK, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671, for damages because of injuries sustained by the plaintiff, after she had mailed a letter in a United States mailbox at Deadwood, South Dakota, located and maintained on private property at the juncture of the inside lane of the adjoining sidewalk and an outside lane of the entrance to that property.

Her position essentially is this, that the post office department, some forty years ago, was negligent in locating its mailbox on the sloping terrain at that point and in permitting the approach on the incline from the southwest to remain unaltered for a long period of years. The combined effect of those conditions, she holds, led to the dangerous slippery conditions in front of the mailbox which caused the accident.

The Government, on the other hand, submits: (1) that the choosing and selecting of such a mailbox site is a discretionary act of the sovereign and therefor not a permissible basis for a charge of negligence; (2) that liability, if any, exclusively was that of the landowner since the approach to the mailbox was also a part of the entrance walk to his hotel and (3) more generally, that the Government can not be held responsible under rules which obtain in snowy or icy sidewalk accident cases.

As for the controlling factual situation, established by the evidence, the court's own observation of the accident site and all of the facts and circumstances, the court finds:

### 1.

That the mailbox, its site, the adjoining sidewalk and sidewalk entrance to the hotel on the property where the box was located, the slope of the approach to it from the southwest, the other approach thereto from the adjoining sidewalk and the slope of the entire surrounding terrain, are as they appear in the respective picture exhibits offered and received in evidence and on the plat marked plaintiff's exhibit 1, except for the snow and

slippery conditions which existed at the time of the accident on November 15, 1961.

**2.**

That a light continuing snowfall on that date up to the time of the mailing, throughout the night before, preceded by mild weather on the fourteenth, thereafter by colder and freezing temperatures had made the sloping part of the approach as well as the sidewalks somewhat slippery and to that extent hazardous.

**3.**

That the entire snowfall did not exceed six inches. At no time did the owner of the property permit accumulations to a degree which prevented users of the approach from noticing the slippery conditions thereof and the sidewalk leading to it, his precautions in that respect on the fifteenth having been effectuated by two snow removing operations, one in the morning and the other shortly before the accident.

**4.**

That the immediate chain of events which led to and caused the plaintiff's injuries after she had completed the mailing while standing on a substantially level part of the approach front of the box, (plaintiff's exhibit 3(1) and Government's exhibit 3(a)), was her falling on her left side as she was turning in that direction, with her left arm including the elbow absorbing most of the shock of her fall.

**5.**

It is established also and the court finds that the plaintiff during the twenty some years she had lived in the apartment located not more than one hundred fifty feet from the mailbox, became and at the time she started out to do her mailing, was thoroughly familiar with all of the conditions of the approach, including those created by weather and that she anticipated all of the risks as she proceeded to do the mailing.

**6.**

Also that her claim of negligence against the Government, is charged to the slippery conditions caused by the weather and the sloping approach and not to any other causes.

**7.**

That the mailbox was located at its present site more than forty years ago and that the approaches to it are a part of the entrance to the hotel and not a part of the adjoining sidewalk.

**8.**

That the section of the city of Deadwood where the mailbox is located, is hilly, the slope of the approach corresponds substantially to that of the adjoining sidewalk, there is no evidence to show that the slope could have been eliminated or that a change in construction, more safe from a practical point of view, could have been devised.

Liability on the part of the United States may not be predicated on negligence of its agents in carrying out instructions from the Postmaster General to locate an outside mailbox—in this case at the point found to have been designated—such a function being but the exercising of a vested discretionary power by the official under 39 U.S.C.A. § 6003(a) [1], and therefor outside the scope of the Federal Tort Claims Act by reason of the exceptions thereto contained in Section 2680 [2] which provide:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such

1. "(a) When the public convenience requires, the Postmaster General may provide receiving boxes for the deposit of mail and for the collection of mail deposited therein."

2. Title 28 U.S.C.A.

statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

With reference to such exclusion from the Act it is said in Dalehite v. United States, 346 U.S. 15, at page 30, 73 S.Ct. 956, at page 965, 97 L.Ed. 1427:

"This paragraph characterizes the general exemption as 'a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of authorized activity, such as a flood control or irrigation project, where no negligence on the part of any government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious * * *. The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion.' ".[3]

■ Like immunity, however is not available to the Government as a defense, where as in this case liability, if any, has its origin in the operational aspects of such a mailing unit, after it shall have been located and erected in the exercise of governmental discretionary powers. Dahlstrom v. United States, 228 F.2d 819 (8 Cir. 1956). This guideline is clearly suggested in the court's approval of the appellant's contentions that:

"We believe that when the government, at the planning level, determines programs, plans, specifications, or schedules of operations, it is exercising an immune discretion and any activity pursuant to such

a plan does not give rise to liability under the Act. But if the government, at the operational level, acts either contrary to the plan or in a manner not regulated by the plan then the activity would not be discretionary and redress can be had for the resulting injury.",

and as it referred to the statement in another:

"While they were in a sense exercising discretion as to what they should and should not do, they were not performing the sort of discretionary functions contemplated by § 2680(a) * * *." "It is therefore our opinion that, if a Government towerman * * * is guilty of some * * * negligent act or omission in doing his work, the Government is liable for resulting injury in the same manner and for the same reason that it is liable for injury done by the driver of a mail truck who, in exercising discretion as to how to drive, negligently runs through a red traffic light."

■ Approaching the question of the alleged liability, then, from the standpoint of the operational conditions in existence after the mailing unit had been located and in the Government as well as the landowner being under a duty to maintain the premises, it is apparent for purpose of this action that the plaintiff as she came and left the mailbox, as she exercised her paid for mailing privilege and at the instance of the post office department joined its patrons in the use of the facility at that point, had the *status of a business invitee.*

A person comes within that classification, it is said when he " * * * is invited or permitted to enter or remain on land for a purpose of the occupier, * * * *"., or enters "premises upon business which concerns the occupier, and upon his invitation express or implied, * * * *", Prosser, Torts (2nd ed. 1955), pages 452–453. The invitation is implied, it is said, " * * * when

3. For other supporting authority see the cases cited and referred to in that opinion.

the owner 'by acts or conduct, leads another to the belief that the use is in accordance with the design for which the place was adapted and allowed to be used in mutuality of interest.' ", Annotation 95 A.L.R.2d, at page 1002. For application of the definition contained in those statements see other references in that Annotation, Phillips v. United States, 102 F.Supp. 943 (E.D.Tenn.1952), also, and Smith v. United States, 117 F.Supp. 525 (N.D.Calif. 1953).

■ The extent of the Government's duty to such an invitee is to be determined " * * * in accordance with the law of the place where the act or omission occurred", 28 U.S.C.A. § 1346 (b), hence, South Dakota's, stated in Norris v. Chicago, M., St. P. & P. R. Co., 74 S.D. 271, 51 N.W.2d 792: " * * * that the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for the breach of such duty", that, " * * * however, is the extent of the duty," a " * * * possessor of land is not an insurer as to the safe condition of the premises", " 'The liability of an owner or occupant to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or in failing to warn him of dangers thereon, must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.' " [4] "The possessor of land, said the court in Bennett v. Louisville and N. R. R. Co., 102 U.S. 577, 26 L.Ed. 235, is liable to invitees for injuries 'occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation,' " and in the final conclusion to the effect that an invitee may not recover where the knowledge of the alleged danger at least equaled that of the defendant owner.

Excluded, under those precepts and as they are further expounded on in the closing paragraph of the opinion [5] are all claims of negligence, charged to the Government. Hazards because of weather, the slanting approach in a hilly terrain familiar to all, entrance surfaces exposed by clearing operations, icy and slippery conditions caused by melting and freezing, matters of common knowl-

4. Adopted from 38 Am.Jur., Negligence, Sec. 97.

5. "It is when the unsafe condition or attendant dangers as we have observed are known to the possessor of land and not known to the person injured that recovery is permitted. Plaintiff, according to his own testimony, had gone daily to the premises of the defendant to meet this train arriving in the evening and was familiar with the practice thereon to which his injury was attributed. Plaintiff argues that defendant knew that it was the custom of Scheibe to drive his truck on the station platform and that such knowledge was of a character that would cause an ordinarily prudent person to foresee that harm would likely result. He says that he, on the other hand, had no reason to anticipate that Scheibe might park his truck south of the depot before the arrival of the train. When he returned to the station about twenty minutes before the accident, his headlights enabled him to observe that no truck was parked in the area. It is apparent from plaintiff's testimony that he knew that it was the practice of Scheibe to park his truck on the station platform including the area south of the depot. Taking as true the testimony that the truck was not parked at the scene of the accident when plaintiff returned to the station, we think that he was chargeable with knowledge that the truck might be parked there anytime prior to arrival of the train. Plaintiff's knowledge of the attendant dangers at least equalled that of the defendant and hence it cannot be said that such conditions were known to the inviter and unknown to the invitee. We believe the trial court reached the right conclusion from the evidence."

edge and anticipated risks, not unknown but known, in view of Norris, leaves the plaintiff entirely without the causation factors on which she rests her case against the United States.[6]

The plaintiff's claim, accordingly, must be denied. It is so held.

This decision is to be regarded as the court's findings of fact and conclusions in the case, with directions to counsel for the successful party to submit form judgment to the court for approval and entry.

---

6. Not overlooked are the South Dakota sidewalk accident cases relied on by the plaintiff. As to those, suffice it to say, that they are not in point and that the opinions in Gurney v. Rapid City, 74 S.D. 194, 50 N.W.2d 360, decided December 3, 1951, and in Poppen v. City of Watertown, 74 S.D. 402, 53 N.W.2d 616, decided June 2, 1952, inescapably bears out that conclusion as it is compared with Norris which was unanimously decided by the South Dakota Court on February 18, 1952.