#25261-rev & rem-GAS

**2010 SD 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FRANCIS JANIS,                                          Plaintiff and Appellant,

v.

NASH FINCH COMPANY d/b/a
PRAIRIE MARKET,                                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

GEORGE J. NELSON of
Abourezk Law Firm, P.C.
Rapid City, South Dakota                    Attorneys for plaintiff
                                                               and appellant.


CRAIG A. PFEIFLE of
Lynn, Jackson, Shultz
  & Lebrun, PC
Rapid City, South Dakota                    Attorneys for defendant
                                                               and appellee.

\* \* \* \*

ARGUED JANUARY 13, 2010

OPINION FILED **03/17/10**

SEVERSON, Justice

[¶1.] Francis Janis (Janis) sued Nash Finch Company (Prairie Market) for its alleged negligent failure to exercise reasonable or ordinary care to make its premises safe for him. The trial court granted Prairie Market's motion for summary judgment on the basis that Prairie Market did not owe a duty of reasonable or ordinary care to Janis. Janis appeals. We reverse and remand.

## BACKGROUND

[¶2.] Prairie Market is a supermarket in Rapid City, South Dakota, owned and operated by Nash Finch Company. The morning of January 28, 2004, was very cold, and a northeast wind was blowing. At approximately 7:30 a.m., Janis, a janitor for Youth and Family Services in Rapid City, came to Prairie Market to purchase food for breakfast. He was wearing rubber-soled work boots. The sidewalk leading to Prairie Market was clear of ice and packed snow. Janis walked through the open sliding glass door on the west end of the Prairie Market entryway and stepped onto a commercial rug on the tile floor immediately inside the door. Upon Janis's second step onto the rug, it slid from under his feet, and he began to fall. Janis reached for a stack of shopping baskets in an attempt to break his fall, but they gave way. He fell awkwardly, twisting his knee and landing on his back. When Janis attempted to get up, he fell a second time. Janis put his hand under him as he fell this second time and felt a patch of ice on the floor. This patch of ice had been hidden under the rug.

[¶3.] Beverly Nagel, Prairie Market's head cashier, witnessed Janis's fall. When Janis got up, he approached Nagel to speak to her. He showed her his

bruised knuckles and told her that his wrist was injured. Nagel walked to the entryway to look at the area where Janis had fallen. She saw that the rug inside the door on the west end of the Prairie Market entryway was out of position as it slid forward during Janis's fall. She also saw a patch of ice two feet by one foot on the floor where the rug had been. Nagel wrote a narrative report of Janis's fall and notified management of the incident. Janis went to the hospital for treatment of his injuries, but returned to Prairie Market to speak with Prairie Market management later in the day. When Janis returned to Prairie Market, "wet floor" warning signs and ice melt had been placed near the door on the west end of the entryway.

[¶4.]      It is not clear how the patch of ice formed under the rug. At the time of Janis's fall, Prairie Market contracted with a floor maintenance company for overnight cleaning of the tile floors in the store, including the entryway. The floor maintenance company swept and scrubbed the floors each night. It has been suggested that floor maintenance company employees placed the rug on the wet tile floor and that water under the rug froze as a result of the cold temperature, wind, and frequent opening of the sliding doors on the morning of Janis's fall. It has also been suggested that moisture tracked into the store by customers and employees accumulated under the rug and froze. There was no evidence that anyone other than Janis had ever fallen on a patch of ice inside the Prairie Market entryway.

[¶5.]      Janis initiated this lawsuit against Prairie Market in January 2007. He alleged that he entered Prairie Market as a business invitee and that Prairie Market failed to exercise reasonable or ordinary care to make its premises safe for him. After significant discovery, Prairie Market moved for summary judgment.

The trial court concluded that the risk of harm was not foreseeable because no prior similar incidents had occurred on the premises. The trial court granted Prairie Market's motion for summary judgment on that basis that Prairie Market did not owe a duty of reasonable or ordinary care to Janis. Janis appeals.

## STANDARD OF REVIEW

[¶6.] This Court's standard of review of a grant or denial of a motion for summary judgment is well settled. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we determine whether the moving party has demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." Dykstra v. Page Holding Co., 2009 SD 38, ¶23, 766 NW2d 491, 496 (citations omitted). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* "The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Id.*

[¶7.] "Summary judgment is proper in negligence cases if no duty exists as a matter of law." Pierce v. City of Belle Fourche, 2001 SD 41, ¶8, 624 NW2d 353, 355 (citing Peterson v. Spink Elec. Coop., Inc., 1998 SD 60, ¶¶1-2, 578 NW2d 589, 591). "[Q]uestions of negligence, contributory negligence, and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." Rowland v. Log Cabin, Inc., 2003 SD 20, ¶14, 658 NW2d 76, 80 (quoting Pettry v. Rapid City Area Sch. Dist., 2001 SD 88, ¶7, 630 NW2d 705, 708 (quoting *Pierce*, 2001 SD 41, ¶22, 624 NW2d at 356-57)). "It is only when reasonable men

can draw but one conclusion from facts and inferences that they become a matter of law[.]" *Id*.

## ANALYSIS AND DECISION

[¶8.] "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." Stone v. Von Eye Farms, 2007 SD 115, ¶6, 741 NW2d 767, 770 (quoting *Pierce*, 2001 SD 41, ¶22, 624 NW2d at 356-57). "The existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action." Poelstra v. Basin Elec. Power Coop., 1996 SD 36, ¶7, 545 NW2d 823, 825 (quoting Erickson v. Lavielle, 368 NW2d 624, 626 (SD 1985)). While a jury generally determines whether a duty has been breached, "the existence of a duty is a question of law to be determined by the court." Small v. McKennan Hosp. (hereinafter *Small I*), 403 NW2d 410, 413 (SD 1987) (quoting Barger for Wares v. Cox, 372 NW2d 161, 167 (SD 1985)).

[¶9.] This Court has retained the common-law classifications of trespasser, licensee, and invitee in determining the duty a landowner owes the entrants on his land. Andrushchencko v. Silchuk, 2008 SD 8, ¶22, 744 NW2d 850, 857-58 (citing Musch v. H-D Elec. Coop., Inc., 460 NW2d 149, 150 (SD 1990)). A business invitee is "a business visitor 'who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.'" *Rowland*, 2003 SD 20, ¶10, 658 NW2d at 79 (quoting Small v. McKennan Hosp. (hereinafter *Small II*), 437 NW2d 194, 199 (SD 1989) (quoting Restatement

- 4 -

(Second) of Torts, § 332 (1965))). In this case, Janis entered Prairie Market to conduct business on the premises and was therefore a business invitee.

[¶10.] "As a general rule, the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for the benefit of the invitee's safety, and the possessor is liable for the breach of such duty." Mitchell v. Ankney, 396 NW2d 312, 313 (SD 1986) (citing Stenholtz v. Modica, 264 NW2d 514, 516 (SD 1978); Norris v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 74 SD 271, 273, 51 NW2d 792, 793 (1952); Restatement (Second) of Torts, § 343 (1965)). The "duty of reasonable and ordinary care requires keeping the property reasonably safe for the benefit of the invitee." *Id.* at 313 (citations omitted).

[¶11.] Prairie Market argues that no liability can attach to a landowner unless he had knowledge of the allegedly dangerous condition on his property. Prairie Market cites *Parker v. Casa Del Rey-Rapid City, Inc.*, wherein this Court stated: "Reasonable and ordinary care requires [a landowner] to keep [his] premises safe and warn any invitee . . . of any 'concealed, dangerous conditions . . . *known* to [him].'" 2002 SD 29, ¶7, 641 NW2d 112, 116 (quoting *Mitchell*, 396 NW2d at 313) (emphasis added). Prairie Market also relies on *Kryger v. Dokken*: "It is necessary that it be established that the possessor had knowledge of the presence of a dangerous condition of his premises or that the condition existed for such a period of time as to justify an inference that he had knowledge of its existence." 386 NW2d 481, 483 (SD 1986) (quoting *Norris*, 74 SD at 273, 51 NW2d at 793). Prairie Market contends that it did not know of the dangerous condition on its premises and therefore did not owe Janis a duty of reasonable or ordinary care.

[¶12.]     Some confusion exists in South Dakota because the duty a landowner owes invitees is essentially two-fold.  The general duty of reasonable or ordinary care that a landowner owes invitees "includes the duties owed to licensees:  to *warn* of concealed, dangerous conditions *known to the landowner* and to use ordinary care in active operations on the property."  *Mitchell*, 396 NW2d at 313-14 (emphasis added and citations omitted).  *See* Luke v. Deal, 2005 SD 6, ¶15, 692 NW2d 165, 169 (quoting Luther v. City of Winner, 2004 SD 1, ¶19, 674 NW2d 339, 347) (additional citation omitted).  "The duty to warn is a subpart of the duty to keep the property reasonably safe[,]" and "[t]he duty to keep the property reasonably safe is, in turn, a subpart of the general duty to exercise reasonable care" for the benefit of others.  *Mitchell*, 396 NW2d at 314.  The requirement that a landowner know of the dangerous condition on his property limits his duty to warn, but does not constrain his more general duty to keep his property reasonably safe.  *Id.* at 313-14.

[¶13.]     The liability of a landowner to an invitee for failure to render the premises reasonably safe for an invitee, or failure to warn him of a dangerous condition on the premises, is predicated upon a landowner's superior knowledge concerning the dangers of his property.  *Id.* at 314 (quoting *Norris*, 74 SD at 274, 51 NW2d at 793) (additional citation omitted).  This is not to say, as Prairie Market contends, that no liability can attach for failure to make the premises reasonably safe if a landowner did not know of the allegedly dangerous condition on his property.  Tort law "function[s] to promote care and punish neglect by placing the burden of [the] breach on the person who can best avoid the harm."  Clausen v. Aberdeen Grain Inspection, Inc., 1999 SD 66, ¶38, 594 NW2d 718, 726 (citations

omitted). A landowner has superior knowledge of the condition of his property as compared to invitees. *See Kryger*, 386 NW2d at 483 (noting that liability may exist where a dangerous condition on a landowner's property has existed for such a period of time as to justify the inference that he had knowledge of its existence). A landowner is often in the best position to avoid the harm.[1] *See id.*

[¶14.]      In South Dakota, the duty a landowner owes invitees emulates the Restatement (Second) of Torts, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a)      knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b)      should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c)      fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343.

---

1.      In some instances, the burden to avoid the harm is on the invitee:

> The possessor of land is not an insurer of the safety and welfare of an invitee, and thus an owner or occupier of premises may not be liable for injuries where the dangerous condition is known or obvious to the invitee. . . . In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so.

*Mitchell*, 396 NW2d at 315 (internal citations omitted).

[¶15.]    Foreseeability, rather than knowledge, however, is the touchstone of the existence of the duty of reasonable or ordinary care. *Pierce*, 2001 SD 41, ¶12, 624 NW2d at 355. "The risk reasonably to be perceived defines the duty to be obeyed[.]" *Peterson,* 1998 SD 60, ¶14, 578 NW2d at 592 (quoting Nicholas v. Tri-State Fair & Sales Ass'n, 82 SD 450, 456, 148 NW2d 183, 186 (1967) (quoting Palsgraf v. Long Island R.R. Co., 248 NY 339, 344, 162 NE 99, 100 (1928))). "Whether a common-law duty exists depends on the foreseeability of injury." *Luke*, 2005 SD 6, ¶19, 692 NW2d at 170 (quoting *Poelstra*, 1996 SD 36, ¶16, 545 NW2d at 826). A foreseeable risk of harm is one that would be anticipated by a reasonable person. Therefore, "[a] landowner is not required to take measures against a risk [that] would not be anticipated by a reasonable person." *Pierce*, 2001 SD 41, ¶12, 624 NW2d at 355 (citing *Peterson*, 1998 SD 60, ¶14, 578 NW2d at 592).

[¶16.]    The trial court granted Prairie Market's motion for summary judgment on the basis that Prairie Market did not owe a duty of reasonable or ordinary care to Janis. The trial court concluded that the risk of harm was not foreseeable because no prior similar incidents had occurred on the premises. Janis argues that the trial court erred by allowing the lack of prior similar incidents to be determinative of foreseeability. Janis asserts that foreseeability must be viewed in light of all the surrounding facts and circumstances. When all the facts and circumstances of this case are considered, Janis contends that the risk of harm was foreseeable so that Prairie Market had a duty to use reasonable or ordinary care to make its premises safe for its business invitees, including Janis. Prairie Market

maintains that the risk of harm was not foreseeable because no prior similar incidents had occurred on its premises.

[¶17.]     The trial court ruled as a matter of law that the risk of harm was not foreseeable. "[T]he existence of a duty is a question of law to be determined by the court." *Small I*, 403 NW2d at 413 (citation omitted). "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law." Smith v. *ex rel*. Ross v. Lagow Constr. & Dev. Co., 2002 SD 37, ¶18, 642 NW2d 187, 192 (citing *Poelstra*, 1996 SD 36, ¶9, 545 NW2d at 825-26) (additional citations omitted). A court "must determine if a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *Pierce*, 2001 SD 41, ¶8, 624 NW2d at 355 (quoting Bland v. Davison County, 507 NW2d 80, 81 (SD 1993)). As a question of law, this Court reviews the trial court's foreseeability determination de novo. *Poelstra*, 1996 SD 36, ¶9, 545 NW2d at 825 (citations omitted).

[¶18.]     The present case calls this Court to examine the standard for determining foreseeability in premises liability cases. In *Small I*, Rocky Blair abducted, raped, and murdered Teresa Small in a McKennan Hospital parking ramp. 403 NW2d at 411. McKennan Hospital knew of criminal activity in the parking ramp, although no one had been murdered there. *Id*. "[T]his Court refused to allow the lack of prior similar incidents to be determinative of foreseeability[.]" *Small II*, 437 NW2d at 199 (citing and discussing *Small I*, 403 NW2d 410). "Prior incidents, whether similar or not, were properly held to constitute evidence of

foreseeability" and could "be considered with all the other facts and circumstances relating to the issue," but were not required. *Id.* Ultimately, this Court held that "[t]he duty to foresee a risk of harm is dependent upon all the surrounding facts and circumstances and may require further investigation or inquiry before action is taken." *Small I*, 403 NW2d at 413 (quoting Ward v. LaCreek Elec. Ass'n, 83 SD 584, 588, 163 NW2d 344, 346 (1968)). *See* Johnson v. Straight's, Inc., 288 NW2d 325, 328 (SD 1980). Foreseeability therefore depends on the facts of each individual case. *Small II,* 437 NW2d at 199 (citing and discussing *Small I*, 403 NW2d 410).

[¶19.]    It is true, as Prairie Market contends, that *Small I* is distinguishable from the case at hand. *Small I* involved a landowner's failure to protect an invitee from an assault by a third party. 403 NW2d 410. Yet, this Court's reasons for rejecting the prior similar incidents rule in *Small I* are equally applicable in this case. "[T]he 'prior similar incidents' rule 'contravenes the policy of preventing future harm.'" *Id*. at 412 (quoting Isaacs v. Huntington Mem'l Hosp., 38 Cal3d 112, 125, 211 CalRptr 356, 361, 695 P2d 653, 658 (1985)). "[U]nder the [prior similar incidents] rule, the first victim always loses, while subsequent victims are permitted recovery." *Id.* A landowner should not get one free injury on his property before he can be held liable. *See id.* Furthermore, "various trial courts may differ as to what is a 'similar' incident" and may have trouble defining temporal and territorial limits for purposes of determining foreseeability. *Id.*

[¶20.]    Moreover, this Court's rejection of the prior similar incidents was not limited to cases involving a landowner's failure to protect an invitee against an attack by a third party. For instance, in *Pierce*, an airplane owner brought a

negligence action against the City of Belle Fourche after his airplane was damaged when the tie-down ropes provided by the municipal airport broke during a windstorm. 2001 SD 41, ¶¶2-6, 624 NW2d at 354. The issue was whether the City owed a duty of reasonable care to make the municipal airport safe for Pierce, a business invitee. *Id.* ¶6, 624 NW2d at 354-55. This Court considered all the facts and circumstances leading up to the accident and ultimately determined that the City had a duty to use reasonable care to make its premises safe for Pierce because the risk of harm was foreseeable. *Id.* ¶13-17, 624 NW2d at 355-56.

[¶21.] In the instant case, the trial court applied the incorrect legal standard in determining foreseeability. Foreseeability "is dependent upon all the surrounding facts and circumstances," not merely the presence or absence of prior similar incidents. *Small I*, 403 NW2d at 413 (citations omitted). In determining whether Prairie Market owed a duty to Janis, we consider the foreseeability of the risk of harm at the time of Janis's fall. *See Peterson*, 1998 SD 60, ¶16, 578 NW2d at 592 (noting that foreseeability for purposes of establishing duty is viewed at the time the act or omission occurred). "The foreseeability inquiry requires us to consider the circumstances and the knowledge [Prairie Market] possessed[.]" *See id.*

[¶22.] The facts and circumstances of this case demonstrate that the risk of harm was foreseeable. It was foreseeable that a rug placed on a wet tile floor immediately inside a frequently opened door on a January day might involve an unreasonable risk of harm. Because the risk of harm was foreseeable, Prairie Market had a duty to use reasonable or ordinary care to make its premises safe for

its business invitees, including Janis. *See Pierce*, 2001 SD 41, ¶12, 624 NW2d at 355. Indeed, the risk of harm may have been sufficiently foreseeable so that Prairie Market had a duty to conduct "further investigation or inquiry." *See Small I*, 403 NW2d at 413 (citations omitted). Ultimately, whether Prairie Market breached the duty it owed Janis is a question of fact to be determined by a jury. *See Pierce*, 2001 SD 41, ¶28, 624 NW2d at 357.

[¶23.]      It must be noted that a landowner is not an insurer as to the safe condition of the premises. *Mitchell*, 396 NW2d at 314 (citations omitted). A landowner owes a duty of reasonable or ordinary care to entrants on his property only when all the surrounding facts and circumstances, including the knowledge he possesses, indicate that the risk of harm was foreseeable. *Small I*, 403 NW2d at 413 (citations omitted). The law requires "reasonable foresight, rather than prophetic vision[.]" *Peterson*, 1998 SD 60, ¶19, 578 NW2d at 593 (quoting 57A AmJur2d *Negligence* § 138). Negligence exists only if a landowner breaches his duty to use reasonable care under all the circumstances. *Luther*, 2004 SD 1, ¶19, 674 NW2d at 347. A landowner is not strictly liable to those injured on his property.

[¶24.]      In conclusion, the trial court's grant of summary judgment in favor of Prairie Market was error. The trial court erred by allowing the lack of prior similar incidents to be determinative of foreseeability. Considering all the surrounding facts and circumstances, including the knowledge Prairie Market possessed, the risk of harm was foreseeable. Prairie Market therefore had a duty to use reasonable or ordinary care to make its premises safe for its business invitees,

#25261

including Janis. "The question of whether [Prairie Market] met its duty to use reasonable care . . . is a question of fact for a properly instructed jury, not a question of law for summary judgment." *See Pierce*, 2001 SD 41, ¶28, 624 NW2d at 357.

[¶25.]    Reversed and remanded.

[¶26.]    GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶27.]    KONENKAMP and ZINTER, Justices, concur with a writing.


ZINTER, Justice (concurring).

[¶28.]    I join the opinion of the Court. I write to first acknowledge that the result of today's decision is the recognition of a duty of care in some cases involving a failure to discover a condition that was unknown to the possessor and the invitee.[2] I also write to point out that because the circuit court applied an incorrect

---

2.    Nash Finch focuses on language in our decisions suggesting there is no duty arising from a failure to discover or inspect. Nash Finch points out that in one case, we described the premises owner's duty to protect invitees from "concealed, dangerous conditions *known* to . . . [the owner]." Parker v. Casa Del Rey-Rapid City, Inc., 2002 SD 29, ¶ 7, 641 NW2d 112, 116 (emphasis added). In another, we stated it was necessary for the possessor to have knowledge of the presence of the dangerous condition or that the condition existed for such period of time to justify an inference of the existence of knowledge. Kryger v. Dokken, 386 NW2d 481, 483 (SD 1986). And, in yet another case, we simply found no duty to inspect. Mortenson v. Braley, 349 NW2d 444, 446 (SD 1984) (concluding there was no duty to inspect a ladder furnished on the premises).

In *Parker*, however, the central issue was whether the alleged, dangerous condition existed. In *Kryger*, the issue was whether a duty arose under theories of nuisance or strict liability because the defect was *not* discoverable. And, in *Mortenson*, the majority found that factually, no duty to inspect arose where the plaintiff had used a ladder on three prior occasions, the plaintiff was aware of its condition, and the defendant did not assist the plaintiff in
(continued . . .)

test in determining whether Nash Finch should have reasonably foreseen a risk of harm, today's opinion is limited to discussing the question of foreseeability. However, in future cases involving unknown conditions, the court determining the existence of a duty and the fact-finder considering breach should consider two questions. They should consider both whether the risk of harm was foreseeable, *and* whether the condition would have been discovered by the exercise of reasonable care.

[¶29.]     The existence of a duty of care arising from the failure to discover concealed or unknown conditions does not emanate solely from the foreseeability of the risk of harm as discussed by the Court. The duty is also dependent upon a second question: whether the occupier knew of the condition or by the exercise of reasonable care would discover the condition that caused the harm. As Prosser and Keeton explains, for a duty to arise from concealed or unknown conditions, there must be both an unreasonable, foreseeable risk of harm and a failure to exercise due care in discovering the condition. "[T]here is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, *or* from those which the occupier neither knew about nor could have discovered with reasonable care." W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on Law of Torts § 61, at 426 (5th ed 1984) (emphasis added). Even

---

(. . . continued)

any way. Therefore, the issues in those cases were different, and the language of those decisions mentioning knowledge of the condition should not be extrapolated to cases such as this one where the issue is whether a concealed condition would have become known by the exercise of reasonable care.

when a risk of harm is reasonably foreseeable, a duty of care does not arise if the possessor neither knew nor by the exercise of reasonable care would have discovered the condition. "The mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id*. § 61, at 426-27.

[¶30.]     We have recognized this dual inquiry by our repeated citation to the Restatement (Second) Torts § 343 (1965). *See* Pierce v. City of Belle Fourche, 2001 SD 41, ¶ 11, 624 NW2d 353, 355 (citing Restatement (Second) Torts § 343 cmts. b, d); Mitchell v. Ankney, 396 NW2d 312, 313-14 (SD 1986) (citing Restatement (Second) of Torts § 343 cmts. b, d); Ballard v. Happy Jack's Supper Club, 425 NW2d 385, 388 (SD 1988) (citing Restatement (Second) of Torts § 343); Stenholtz v. Modica, 264 NW2d 514, 516 (SD 1978) (citing Restatement (Second) of Torts § 343). Section 343(a) recognizes that the elements of knowledge of the condition and foreseeability of the risk are separate inquiries, and both must be satisfied before a duty is recognized. Section 343 provides:

> A possessor of land is subject to liability for physical harm
> caused to his invitees by a condition on the land if, but only if,
> he
> > (a) knows or by the exercise of reasonable care would
> > discover the condition, *and* should realize that it involves
> > an unreasonable risk of harm to such invitees, and
> > (b) should expect that they will not discover or realize the
> > danger, or will fail to protect themselves against it, and
> > (c) fails to exercise reasonable care to protect them
> > against the danger.

(Emphasis added.) Accordingly, under the common law restated in subsection (a), a possessor's duty of care to an invitee arises if:  (i) the possessor knows or by the

exercise of reasonable care would discover the condition, *and* (ii) the possessor should realize that the condition involves an unreasonable risk of harm to invitees. *Id.* § 343(a).

[¶31.] Although not discussed by the Court, the first question contemplates that a duty may arise from unknown and concealed conditions. By definition, conditions that "would" be discovered by the "exercise of reasonable care" necessarily include some unknown and concealed conditions. *See id.* Thus, contrary to Nash Finch's arguments, the authorities generally recognize that a duty arises when there has been a failure to exercise due care in inspecting for or discovering a previously unrecognized condition that poses an unreasonable risk of harm. *See* Restatement (Second) Torts § 343 cmt. b.[3] Simply stated, the possessor of business premises "is under an affirmative duty to protect [invitees], not only against dangers of which he knows, but also against those which with reasonable care he might discover." Prosser and Keeton on Law of Torts § 61, at 419. On

---

3. Comment b to section 343 provides:

> [A]n invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances.

Restatement (Second) Torts § 343 cmt. b.

remand, the jury should be instructed to determine both whether Nash Finch, by the exercise of reasonable care, would have discovered the condition, and whether, under all the facts and circumstances, it presented an unreasonable risk of harm that Nash Finch should have realized. In future cases, courts should consider both elements in determining whether a duty exists.

[¶32.] KONENKAMP, Justice, joins this special writing.