Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
EUGENE R. POELSTRA and JOANN POELSTRA,
Plaintiffs and Appellants,
v. BASIN ELECTRIC POWER COOPERATIVE,
Defendant and Appellee.
[1996 SD 36]
South Dakota Supreme Court
Appeal from the Third Judicial Circuit, Beadle County, SD
Hon. Eugene L. Martin, Judge #19212 - Affirmed 
John P. Mullen, Quaintance, Hauck & Mullen, Sioux Falls, SD Attorneys for Plaintiffs and Appellants.
David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, SD Attorneys for Defendant and Appellee.
Argued Jan 9, 1996; Opinion Filed Apr 3, 1996
MILLER, Chief Justice.
[Â¶1] Eugene and Joann Poelstra sued Basin Electric Power Cooperative for its alleged negligent failure to mark electrical power lines. At trial, after Poelstras had rested their case, the trial court granted a directed verdict in favor of Basin Electric. Poelstras appeal. We affirm. 
FACTS
[Â¶2] On February 12, 1990, Tim Kennedy was piloting a helicopter and Eugene Poelstra was in the passenger seat. They were on a routine power line patrol for their employer, Western Area Power Association (WAPA), an agency of the United States government. While Kennedy flew the helicopter along WAPA lines, Poelstra looked for evidence of damage to the lines.
[Â¶3] While flying near a substation in the area of Ft. Thompson, South Dakota, the helicopter collided with electric power lines that crossed over WAPA lines. Basin Electric owned the lines that were hit by the helicopter.
[Â¶4] Although Kennedy was relatively uninjured in the crash, Poelstra sustained serious injuries. He and his wife sued Basin Electric, claiming it was negligent in failing to warn of the line crossing by posting signs or installing spherical line markers.{1} The trial court granted a directed verdict to Basin Electric at the conclusion of Poelstras' case, ruling that Basin Electric owed no duty to Poelstra to warn of the line crossing. Alternatively, the trial court ruled that any negligence by Basin Electric was not the proximate cause of Poelstras' injuries. The trial court further determined that Kennedy's negligence in flying the helicopter was an intervening, superseding cause of the accident.
[Â¶5] Poelstras appeal the trial court's grant of a directed verdict. They contend Basin Electric did have a duty to mark its overhead lines or otherwise warn of the crossing. They dispute the trial court's determination that Kennedy's negligence was an intervening, superseding cause of the crash. They also contend the trial court erroneously admitted evidence showing that WAPA now posts [96 SDO 237] warning signs at the crossing where the collision took place.
DECISION
[Â¶6] Did the trial court err in determining as a matter of law that Basin Electric owed no duty of care to Poelstras?
[Â¶7] "The existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action." Erickson v. Lavielle, 368 NW2d 624, 626 (SD 1985). In granting Basin Electric's motion for a directed verdict, the trial court ruled Basin Electric had no duty to warn air travelers that its power lines crossed WAPA power lines. 
[Â¶8] Poelstras assert that foreseeability is the "touchstone" of duty and is essentially a factual inquiry. Citing a Colorado Court of Appeals case, they argue that where the evidence is subject to reasonable dispute, the question of foreseeability and any ensuing duty should be submitted to the jury. See Sewell v. Public Service Co. of Colorado, 832 P2d 994, 997-98 (ColoCtApp 1991). 
[Â¶9] This Court has repeatedly held that the existence of a duty is a question of law for the court to decide and is subject to de novo review. Bland v. Davison County, 507 NW2d 80, 81 (SD 1993); Clauson v. Kempffer, 477 NW2d 257, 258 (SD 1991); Gilbert v. United National Bank, 436 NW2d 23, 27 (SD 1989); Small v. McKennan Hosp., 403 NW2d 410, 413 (SD 1987) (citing Barger for Wares v. Cox, 372 NW2d 161, 167 (SD 1985)); Erickson, 368 NW2d at 627 (citing Cuppy v. Bunch, 88 SD 22, 26, 214 NW2d 786, 789 (1974)). The contrary conclusions of a Colorado Court of Appeals do not persuade us to abandon our settled precedent on this question.{2}
[Â¶10] 1. No statutory duty.
[Â¶11] Duty may be imposed by common law or by statute. Albers v. Ottenbacher, 79 SD 637, 641, 116 NW2d 529, 531 (1962). Poelstras point to several South Dakota statutes which they claim imposed a duty on Basin Electric to mark the power lines in question. 
[Â¶12] Poelstras begin by citing SDCL 20-9-1, which states:


Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.
[Â¶13] This statute simply recognizes the right of injured persons to recover from wrongdoers who fail to exercise ordinary care. It does not define the circumstances under which the law imposes a duty on an alleged tort-feasor such as Basin Electric.
[Â¶14] Poelstras cite other statutes concerning electrical lines, claiming they impose a duty on Basin Electric to mark their lines. SDCL 49-32-11 states: [96 SDO 238]


No person may, individually or through an agent or employee, and no person as an agent or employee of another person, may perform or permit another to perform any function or activity if it is probable that during the performance of such activity any person or any tool, equipment, machinery or material engaged in performing work connected with such activity, will move to, or be placed in, a position within six feet of any high voltage overhead electrical line or conductor. A violation of this section is a Class 2 misdemeanor.


This statute prohibits persons from performing or permitting others to perform work within six feet of a high voltage electrical line. Nothing in this statute requires Basin Electric to mark its lines. Similarly, SDCL 49-32-5 imposes a minimum height for electrical lines. SDCL 49-32-8 goes on to state:
Nothing contained in Â§Â§ 49-32-5 and 49-32-6 may be construed to exempt anyone owning or operating any telecommunications facilities, or electric lines in this state from liability for any damage or injury which anyone may sustain by reason of the faulty or negligent construction or maintenance of such telecommunications facilities, or electric lines.
SDCL 49-32-8 prohibits faulty or negligent construction and maintenance of electric lines. It does not decide the difficult question posed by this case â whether Basin Electric was obligated to mark the electric lines that crossed over WAPA lines. Therefore to resolve the duty issue, we must consider common-law negligence principles.
[Â¶15] 2. No common-law duty.
[Â¶16] Whether a common-law duty exists depends on the foreseeability of injury. Mark, Inc. v. Maguire Ins. Agency, Inc., 518 NW2d 227, 229-30 (SD 1994) (citing Mid-Western Electric Inc. v. DeWild, Grant, Reckert & Associates Co., 500 NW2d 250, 254 (SD 1993)). "[N]o one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." Bearry v. Brensing, 85 SD 370, 374, 182 NW2d 655, 657 (1970), overruled on other grounds, Hunt v. Briggs, 267 NW2d 566, 568 (SD 1978).
[Â¶17] As one court observed in a case similar to the one before us:


[T]he law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonably to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines.
Gunn v. Edison Sault Electric Co., 179 NW2d 680, 682 (MichCtApp 1970) (citing 26 AmJur2d Electricity, Gas, & Steam Â§ 43 (1966)).
[Â¶18] Poelstras note that South Dakota law considers the foreseeability of harm as an element of both duty and proximate cause. However, foreseeability for purposes of establishing a duty is not invariably the same as the foreseeability relevant to causation. Mack v. Altmans Stage Lighting Co., Inc., 470 NYS2d 664, 667 (NYAppDiv 1984). "[T]he latter essentially is to be viewed as of the time when the damage was done while the former relates to the time when the act or omission occurred." Id.
[Â¶19] Consequently, in determining whether [96 SDO 239] Basin Electric owed a duty to Poelstras, we must consider the foreseeability of harm at the time the lines were constructed and left unmarked. The conduct of Poelstra and pilot Kennedy and the circumstances of the accident relate to causation; these facts are not relevant to our determination of duty.
[Â¶20] When exploring the foreseeability of harm arising out of the failure to mark power lines, other courts have adopted the following rule:


[N]o duty or breach of duty exists as a matter of law where the following elements exist: the height of power lines and their location are in compliance with applicable ordinances and FAA regulations; no notice of prior accidents of a similar kind involving the power lines exists; and the power lines, as constructed, do not create an unreasonable risk of harm.
Florida Power and Light Co. v. Lively, 465 So2d 1270, 1274 (FlaCtApp 1985), review denied, 476 So2d 674 (Fla 1985); Baine v. Oklahoma Gas and Elec. Co., 850 P2d 346, 348 (OklaCtApp 1992). 
[Â¶21] Applying this test to the case before us, we conclude that Basin Electric owed no duty of care to Poelstras. First, the height and location of the power structures did not violate the law. One of Poelstras' own experts acknowledged that Basin Electric's towers did not conflict with any rules of the Federal Aviation Administration (FAA) regarding the marking of such structures. Additionally, Basin Electric had requested a study by the FAA to determine whether the absence of marking or lighting on the towers in question would impair air navigation safety. The FAA responded that these structures did not require marking or lighting. Likewise, Poelstras have not identified any South Dakota rules or laws requiring the structures to be marked.
[Â¶22] Second, there is no evidence of prior accidents of a similar kind involving power lines owned by Basin Electric or other power companies in the Fort Thompson area. 
[Â¶23] Third, the power lines as constructed do not pose an unreasonable risk of harm. Poelstras note that Basin Electric always posts warning signs when one of its electric lines crosses another Basin Electric line. Poelstras contend that Basin Electric's policy to mark its own lines demonstrates a foreseeable risk of harm due to the failure to similarly mark crossings over foreign lines. We do not agree. When Basin Electric constructs a line crossing a foreign line, it inquires about special conditions, including marking, requested by the foreign company. These special conditions are followed by Basin Electric in constructing the crossing line. There was no evidence that WAPA ever asked Basin Electric to mark the crossing where the accident occurred. Additionally, while Basin Electric has perfect knowledge of its own line patrol procedures and the need for marking its internal crossings, it is not required to assume that other companies will also patrol from the air, rather than conducting ground patrols. In fact, the proliferation of power lines near the Ft. Thompson substation made air patrols an unlikely method of maintenance. WAPA's own flight operations manual designated the Ft. Thompson substation as a hazardous area. The manual stated: "Fort Thompson substation. Numerous lines all directions. Mostly double circuit 320-kV but some single circuit 230-kV and 345-kV yard. Recommend caution within one-half mile." The manual further instructed patrol crews as follows: "Certain areas have been designated as hazardous for helicopter operations. These areas will be patrolled with extreme caution or not patrolled at all." Given the apparent inappropriateness of air patrol in the Ft. Thompson substation area, it would not have been reasonable for Basin Electric to mark its lines in anticipation of such patrols. 
[Â¶24] As noted previously, "no one is required to guard against or take measures to avert that which a reasonable person under the [96 SDO 240] circumstances would not anticipate as likely to happen." Bearry, 85 SD at 374, 182 NW2d at 657. In this case, the proliferation of power lines, rather than the absence of warning markers, made air patrol of the Ft. Thompson location hazardous. Basin Electric could not reasonably anticipate that air patrols would be conducted in such an area. Additionally, Basin Electric's policy gave WAPA the opportunity to request line markers on the crossing in question. When WAPA failed to request the installation of marker balls or other warnings, Basin Electric could reasonably conclude that WAPA had opted to patrol the lines from the ground or had taken other measures to insure safe inspections of the lines. In light of these circumstances, we hold that the accident was not foreseeable to Basin Electric and it owed no duty to mark the crossing or otherwise warn of its overhead lines. 
[Â¶25] Having determined that Basin Electric owed no duty to Poelstras, we need not consider whether the trial court erred in determining that any negligence by Basin Electric was not the proximate cause of Poelstras' injuries. We also need not consider whether Kennedy's negligence was an intervening, superseding cause of the crash. Finally, because the nonexistence of a duty running from Basin Electric to Poelstras disposes of this case, the admissibility of subsequent remedial measures by a nondefendant need not be considered.
[Â¶26] Affirmed. 
[Â¶27] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.
----Footnotes---- 
fn1. At oral argument, Poelstra's counsel stated that Poelstra was unable to proceed with a negligence suit against WAPA or pilot Kennedy due to the exclusivity provision of the federal worker's compensation law. 
fn2. The trial court ruled there was no duty in response to a motion for directed verdict. Poelstras also urge application of our standard of review for such motions:


A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is substantial evidence to continue the action. At this point in the trial, the court, in making this determination, is not free to weigh the evidence or gauge the credibility of witnesses. The trial court, as well as this court on appeal, must view the evidence in a light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence. If, when so viewed, there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact.
Haberer v. Rice, 511 NW2d 279, 284 (SD 1994) (citations omitted). However, the issue presented by the motion for a directed verdict was whether Basin Electric owed a duty of care to Poelstras. Whether a duty exists is a question of law, fully reviewable by this Court on appeal. Bland, 507 NW2d at 81. We therefore consider the existence of a duty under the de novo standard. For a discussion of similar standard of review conflicts, see Delzer v. Penn, 534 NW2d 58, 61 n2 (SD 1995).