2005 SD 6

**Donna M. LUKE, As Personal Representative of The Estate of Michael Luke, Plaintiff and Appellant,**

v.

**Jon DEAL, Defendant and Appellee.**

Nos. 23169, 23184.

Supreme Court of South Dakota.

Argued Nov. 15, 2004.

Decided Jan. 12, 2005.

George F. Johnson, Wally Eklund, Johnson Eklund Law Office, Gregory, South Dakota, Attorneys for plaintiff and appellant.

Mark D. O'Leary, O'Leary Law Office, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice.

[¶ 1.] While moving snow with a Caterpillar loader at a ranch owned by Jon Deal ("Deal"), Michael Luke ("Michael") struck and punctured a propane tank which resulted in a large explosion. Michael died as a result of the injuries he sustained. Donna Luke, Michael's wife, as the personal representative of Michael's estate (the "estate") sued Deal for wrongful death. The jury found Deal to be negligent. However, the jury also found Michael to be contributorily negligent and that his contributory negligence was more than slight. The estate claims in issue 1 that the trial court erred in failing to instruct the jury that a landowner owes a duty to an invitee to warn of known, concealed dangers. On notice of review, Deal claims in issue 3 that there was insufficient evidence to submit the issue of his negligence to the jury. We reverse issue 1 and affirm issue 3, notice of review.

## Facts

[¶ 2.] On January 30, 2001, after a heavy snowstorm, Deal's ranch was snowed in to the point where Deal could not feed his cattle. He therefore called Luke Construction to inquire as to whether they could assist him with the snow removal. Deal spoke with Jim Luke (Michael's brother) and was informed that they would be available within the next day or two. Early the following morning, Michael called to inform Deal that he was on his way out to the ranch. He arrived at approximately 8:00 A.M. driving a Caterpillar front-end loader. Jennifer Luke,

Michael's daughter who was 18 years-old at the time, followed behind in a pickup truck.

[¶ 3.] Before beginning, Michael got out of his loader to talk with Deal. They discussed the areas of the ranch that needed to be cleared and started with the hay yard which was west of the Deal home. Deal used one of his tractors to assist in the snow removal operation. At various times while working in the hay yard Michael and Deal stopped to discuss their progress, at which times Deal also warned Michael of various objects to watch out for including a liquid feed line.

[¶ 4.] By early afternoon, they completed their work in the hay yard and moved the snow removal operation to the driveway that leads to Deal's ranch house and the other buildings. Before they began, the two men again discussed how they were going to proceed and then cleared the driveway. Afterwards, they again stopped to talk, this time in front of the red barn. Deal instructed Michael to clear the yard on the south side of the house and then to clear the area directly in front of the red barn. Deal also warned him of a tractor tire and rim that was buried underneath the snow in front of the barn.[1]

[¶ 5.] While Michael worked to clear the yard by the house as the two had discussed, Deal was sitting on his tractor with his back to him talking on his cell phone. As Michael was clearing the snow on the west side of the house, the blade of the loader struck and punctured the end of a 1,000–gallon propane tank that had been filled about a month earlier and was completely buried under the snow. The propane gas ignited which resulted in a large explosion.

[¶ 6.] Just before the explosion occurred, Deal was getting out of his tractor. Moments later, Michael emerged from the large fire ball. Both Jennifer and Deal rushed to his aid. Michael asked Deal why he did not tell him the propane tank was there, to which Deal did not respond and bowed his head.[2]

[¶ 7.] Approximately 50%–70% of Michael's body was severely burned. He died five days later from the injuries. Deal also sustained burn injuries but to a much lesser extent.

[¶ 8.] The estate sued Deal and Farmer's Co-op Oil Company ("Farmer's Co-op") for wrongful death. Deal sued Luke

---

1. Deal testified as follows:
   Q: And, what did you tell Mike at that time?
   A: Well, I told him that I wanted him to clean out the yard, push it up there on the north side of the house, like what we were doing, and that there was a big snow bank in front of the barn that I wanted him to shave some of that off, and told him about a tractor tire and a rim that were in front of the barn that was buried underneath the snow.
   . . .
   Q: Okay. Anything else that was said during that conversation?
   A: I told him to keep me on the list because the way the snow was, why, he was probably going to have to come back, and that I wanted him to continue cleaning out the yard the way it was. And he said, well I seen your dad do this or a lot of times we just push snow to the south against the three buildings, I'm going to take a bunch of short, quick pushes and get out of here.

2. Jennifer Luke testified as follows:
   Q: Did there come a time when [your father] directed a statement or question towards Jon Deal?
   A: Yes. He—after he got up, he looked right at him and said, why didn't you tell me that was there? Why didn't you tell me? He was real stern about it.
   Q: And, what did Jon Deal do?
   A: He didn't do anything, he just shook his head.
   Q: How did he react?
   A: He was sitting on a snow pile, he just kind of bowed his head.

Construction and Farmer's Co-op for his injuries. Deal's third party claims were settled before trial.

[¶ 9.] The trial court separated the estate's liability and damage claim for trial. During jury deliberations, the estate settled with Farmer's Co-op leaving Deal as the only defendant. The jury found Farmer's Co-op not negligent and Deal negligent. However, they also found Michael to be contributorily negligent, more than slight.

[¶ 10.] The Luke estate filed a motion requesting a new trial, which was denied. The estate appeals, raising two issues:

1. Whether the trial court erred in failing to instruct the jury regarding the landowner's duty to warn an invitee of known, concealed dangers.

2. Whether the trial court erred in denying the estate's motion for a new trial.

On notice of review, Deal appeals:

3. Whether there was sufficient evidence for the trial court to submit the issue of Deal's negligence to the jury.

## Standard of Review

[¶ 11.] We review a trial court's refusal of a proposed instruction under an abuse of discretion standard. The trial court has broad discretion in instructing the jury. Jury instructions are satisfactory when, considered as a whole, they properly state the applicable law and inform the jury. *State v. Martin*, 2004 SD 82, ¶ 21, 683 N.W.2d 399, 406 (citing *State v. Webster*, 2001 SD 141, ¶ 7, 637 N.W.2d 392, 394). The party asserting that an instruction was given in error must show that the instruction was both erroneous and prejudicial. *First Premier Bank v. Kolcraft Enterprises, Inc.*, 2004 SD 92, ¶ 40, 686 N.W.2d 430, 448 (citing *State v. Moschell*, 2004 SD 35, ¶ 54, 677 N.W.2d 551, 567). "An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it." *Id.* (citing *Carpenter v. City of Belle Fourche*, 2000 SD 55, 609 N.W.2d 751).

[¶ 12.] "A claim that the evidence was insufficient to establish contributory negligence is viewed 'in the light most favorable to upholding the verdict.'" *Johnson v. Armfield*, 2003 SD 134, ¶ 7, 672 N.W.2d 478, 481 (citing *Parker v. Casa Del Rey*, 2002 SD 29, ¶ 5, 641 N.W.2d 112, 115).

[¶ 13.] **1. Whether the trial court erred in failing to instruct the jury regarding the landowner's duty to warn an invitee of known, concealed dangers.**

[¶ 14.] During the settlement of instructions, the estate offered proposed instructions regarding a landowner's duty to warn invitees of known, concealed dangers.[3] However, those proposed instructions were denied and instead the trial

---

3. Plaintiff's proposed instructions # 36 and # 44 are as follows:

*Instruction # 36*
Reasonable and ordinary care requires the defendants Farmer's Co-op Oil Co., Jon Deal and CENEX to keep premises from which propane fuel is stored for use safe and warn any invitee, like Michael Luke, of any concealed, dangerous conditions known to them or that they should anticipate. The duty to warn is a subpart of the duty to keep the property reasonably safe. The duty to keep the property reasonably safe is, in turn, a subpart of the general duty to exercise reasonable care.

*Instruction # 44*
As a landowner, the duty of Jon Deal is to warn people invited on his premises of concealed, dangerous conditions which Jon Deal knew of, or in the exercise of reasonable care, should have known of.

court used the following instructions regarding this particular issue:

*Instruction # 12*

Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, under facts similar to those shown by the evidence. This requires care commensurate with the danger involved, under all the facts and circumstances shown by the evidence. The law does not say how a reasonable person would act under facts similar to those shown by the evidence. That is for you to decide.

*Instruction # 20*

The possessor of land owes an invitee the duty of exercising reasonable or ordinary care for the invitee's safety. Michael Luke was an invitee of Jon Deal.

The estate claims that the trial court erred in failing to give the jury a full and correct statement of the law on the duties owed by landowners and that this ultimately prejudiced the estate. We agree.

■■ [¶ 15.] This area of law is well-settled. A landowner owes a business visitor or invitee the duty of using ordinary or reasonable care for the benefit of the invitee's safety. *Luther v. City of Winner,* 2004 SD 1, ¶ 19, 674 N.W.2d 339, 347 (citing *Mitchell v. Ankney,* 396 N.W.2d 312, 313 (S.D.1986)); Restatement (Second) of Torts § 343 (1965). This duty requires the landowner to keep the property reasonably safe. *Luther,* 2004 SD 1, ¶ 19, 674 N.W.2d at 347; Restatement (Second) of Torts § 343, comment b. "This general duty includes the duties owed to licensees: to *warn* of concealed, dangerous conditions known to the landowner. . . ."

*Luther,* 2004 SD 1, ¶ 19, 674 N.W.2d at 347 (quoting *Mitchell,* 396 N.W.2d at 313) (emphasis in the original).

■ [¶ 16.] Michael was an invitee, as he was hired by Deal to perform snow removal on Deal's ranch.[4] As the landowner, Deal had a duty to use reasonable care in ensuring Michael's safety. The Restatement (Second) Torts provides:

an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation.

Restatement (Second) Torts § 343, comment b. Furthermore,

[a]n invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or *to give warning of the actual condition and the risk involved therein.*

Restatement (Second) Torts § 343, comment d (emphasis added).

[¶ 17.] Here, Deal had a duty to warn Michael of any known, concealed dangers. *Luther,* 2004 SD 1, ¶ 19, 674 N.W.2d at 347. Deal had reason to know that the propane tank could be dangerous or deadly if punctured. The evidence establishes that Deal knew exactly where the propane tank was located in the farm yard and that it was completely covered by snow at the time of the accident. Therefore, when Deal instructed Michael to "clean out the yard," he had a duty to warn him of the

---

**4.** The Restatement (Second) Torts § 332 defines an "invitee" as:

(1) An invitee is either a public invitee or a business visitor.

. . .

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

buried propane tank and any other known, concealed dangers located in the farm yard. Although Deal partially fulfilled this duty by warning Michael about the tractor tire and rim buried underneath the snow in front of the barn, he failed to warn him about the buried propane tank near the house.

[¶ 18.] Deal asserts that there should be some geographical limitation based on foreseeability that limits the landowner's duty to warn of known, concealed dangers. We agree to the extent that it is a jury question. In other words, the landowner may not have a duty to warn invitees of known, concealed dangers that are not in the area where the invitee is going to work. Deal contends that he had no reason to believe that Michael was going to be working in the area of the farm yard where the propane tank was located and therefore had no duty to warn him of that known, concealed danger. Whether he knew or should have known that Michael was going to be working in the area of the farm yard where the propane tank was located, is a question for the jury under proper instruction.

[¶ 19.] "Whether a common-law duty exists depends on the foreseeability of injury." *Poelstra v. Basin Elec. Power Co-op.*, 1996 SD 36, ¶ 16, 545 N.W.2d 823, 826. Here, Deal instructed Michael to clear snow in the *farm yard* and the buried propane tank was located within the *farm yard*.[5] Specifically, the evidence shows that Deal intended for Michael to clear the area of the farm yard that is on the south side of the house. As the propane tank was located on the west side of the house near the structure's southwest corner, the jury could reasonably conclude

that the propane tank was in the area where Michael was going to work. This being the case, the risk of injury from inadvertently striking the buried propane tank may be reasonably foreseeable and Deal would have a specific duty to warn Michael of its location.

[¶ 20.] Deal "nicked" the cap of the propane tank with his tractor approximately one month prior to the accident while he was clearing snow so that it could be filled. In addition, he knew that the propane tank was again completely covered by snow on the date of the incident and said nothing after the explosion when Michael asked him why he had not told him about the covered propane tank.

[¶ 21.] The law is clear that a landowner owes a duty to warn his invitees of known, concealed dangers. *Luther*, 2004 SD 1, ¶ 19, 674 N.W.2d at 347. The failure to properly instruct on the duties owed can mislead and confuse the jury. Any instruction that is misleading, conflicting, or confusing creates reversible error. *Johnson*, 2003 SD 134, ¶ 8, 672 N.W.2d at 481; *Thomas v. Sully County*, 2001 SD 73 ¶ 4, 629 N.W.2d 590, 591; *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618. By limiting the jury to instructions twelve and twenty, which only generally describe this particular area of law, the trial court failed to adequately instruct the jury on the duty a landowner owes to an invitee of known, concealed dangers. The inadequate instructions prejudiced the estate in that it misled the jury as to the duty that Deal owed to Michael, which in turn likely had some effect on the jury's verdict.

[¶ 22.] Based on the above, the trial court erred in instructing the jury. There-

---

5.  During oral arguments, Deal's attorney conceded that the buried propane tank was within the boundaries of the farm yard.

fore, we reverse and remand for a new trial so that the jury can be properly instructed as to the duty a landowner owes to his invitees concerning known, concealed dangers.

[¶ 23.] **2. Whether the trial court erred in denying the estate's motion for a new trial.**

[¶ 24.] We do not reach this issue because of our decision on issue 1.

[¶ 25.] **3. Whether there was sufficient evidence for the trial court to submit the issue of Deal's negligence to the jury.**

 [¶ 26.] On notice of review, Deal asserts that the evidence is legally insufficient to support a finding of negligence on his part. However, the evidence indicates that Deal knew exactly where the propane tank was located, that he knew the propane tank was completely covered by snow on the date of the incident, that Deal knew or should have known that the propane tank could be dangerous or deadly if punctured, and that he may have been inattentive to the snow removal operation when Michael began to clear snow in the farm yard south of the house. In fact, as indicated, Deal himself nicked the propane tank approximately a month earlier even though he knew where it was located. Furthermore, when asked by Michael after the explosion why he had not told him that the propane tank was there, Deal said nothing and bowed his head.

[¶ 27.] Deal had a duty to warn Michael of any known, concealed dangers located in the farm yard when he instructed him to "clean out the yard." Yet, he failed to do so. At the very least, these are genuine issues of material fact, upon which reasonable minds might differ and present jury questions. *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989).

[¶ 28.] There was sufficient evidence for the trial court to submit the issue of Deal's negligence to the jury. On retrial on proper instructions, it will be for the jury to decide whether the contributory negligence of Michael, if any, was more than slight barring his recovery.

[¶ 29.] We reverse and remand issue 1 for a new trial and affirm issue 3, the notice of review.

[¶ 30.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.