#24638, #24641-a-RWS

**2008 SD 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

FIRST AMERICAN BANK
& TRUST, N.A.,                                    Plaintiff and Appellee,

  v.

FARMERS STATE BANK OF CANTON,          Defendant and Appellee,
    and
MIDWEST COPIER SOLUTIONS, INC.
and S.A. ENTERPRISES, INC.,                    Intervenors and Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FIRST AMERICAN BANK & TRUST, N.A.,       Plaintiff, Defendant to
                                                 Complaint in Intervention,
                                                 and Third Party Plaintiff,

  v.

STUART HAMILTON and S.A.
ENTERPRISES, INC.,                             Third Party Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRADLEY G. ZELL
Judge

* * * *

ARGUED MAY 21, 2008

OPINION FILED **08/13/08**

THOMAS J. WELK
MICHAEL F. TOBIN of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota

Attorneys for plaintiff
and appellee First
American Bank & Trust.


PATRICK DOUGHERTY of
Dougherty & Dougherty, LLP
Sioux Falls, South Dakota

Attorneys for defendant
and appellee Farmers State
Bank of Canton.


RONALD A. PARSONS, JR.
STEVEN M. JOHNSON
TAMARA A. WILKA of
Johnson, Heidepriem, Janklow,
 Abdallah & Johnson, LLP
Sioux Falls, South Dakota

Attorneys for intervenors
and appellants.

SABERS, Justice.

[¶1.]     First American Bank & Trust (First American) brought a declaratory action against Farmers State Bank (Farmers Bank) to determine which party was in the first position secured party. Midwest Copier Solutions, Inc. (Copier)[1] intervened and alleged various causes of actions against both banks. All parties moved for partial summary judgment. After the circuit court ruled against Copier, it appealed. We affirm.

## FACTS

[¶2.]     On January 17, 2003, Copier sold its business to Keith Beachler's newly formed company, Midwest Communications (Communications). Communications purchased the business for $855,576.00 pursuant to an asset sale agreement. Communications also entered into a five-year lease with S.A. Enterprises[2] for the building in Sioux Falls, South Dakota. Communications made a $100,000.00 down payment and signed a promissory note for the balance. The promissory note and accompanying documents gave Copier a security interest in all of Communications' assets. Beachler personally guaranteed the obligations. Copier filed a UCC-1 financing statement with the Secretary of State's office, perfecting its security interest on January 29, 2003.

[¶3.]     Hamilton, the owner of both Copier and S.A. Enterprises, had various loans with First American that he wanted to refinance. S.A. Enterprises took out a

---

1.    Copier is owned by Stuart Hamilton, who also owns a separate business, S.A. Enterprises, Inc.

2.    *See* note 1.

$650,000.00 loan on February 28, 2003. This loan was secured by a real estate mortgage on out-of-state property and the UCC-1 financing statement in which Copier perfected its security interest in Communications' assets (Copier/Communications UCC-1). Hamilton signed the security agreement with First American, which provided for collateral assignment of the Copier/Communications UCC-1 and "authorize[d] [First American] to file a financing statement covering the Property." On March 4, 2003, First American filed a UCC-3 assignment form with the Secretary of State's office. The form listed Copier as the secured party, First American as the assignee of the secured party and Communications as the debtor. The UCC-3 also referenced the Copier/Communications UCC-1 as the original financing statement. However, the UCC-3 filed by First American failed to note that it was only a collateral assignment of Copier's secured interest in Communications assets. S.A. Enterprises paid the $650,000.00 debt in October of 2003, but no termination statement was requested and the UCC-3 was not canceled or amended at the Secretary of State's office.

[¶4.] Starting January 2003, First American also loaned money to Communications. However, First American did not file a financing statement. Therefore, while First American was a secured party, it was not perfected. First American made a series of loans to Communications, each time taking a security interest in all of Communications' business assets. This continued until August of 2004, when First American refused to extend Communications any more credit.

[¶5.]        Communications approached Farmers Bank about obtaining a loan. Farmers Bank indicated it might refinance the debt if it could be placed as the first position secured party. Communications requested, and First American provided, a letter which indicated that First American had the first perfected security interest in Communications' business assets and if Farmers Bank paid Communications' outstanding debt with First American, it would "either satisfy the assigned filing or reassign it to another lender." All parties now agree that First American's conclusion that it was the first position secured party was erroneous and Copier actually held the first position at all times.

[¶6.]        Farmers Bank loaned $340,000.00 to Communications; $202,107.11 went to First American to pay Communications' debt to First American. On September 13, 2004, First American collaterally assigned its security interest to Farmers Bank, listing the Copier/Communications UCC-1 as the initial financing statement. On September 20, 2004, Farmers Bank filed its own UCC-1 to secure Communications' debt to its bank (Farmers/Communications UCC-1). Farmers Bank did not list the UCC-3 assignment in the Farmers/Communications UCC-1.

[¶7.]        Communications was frequently delinquent in its obligations to Copier from time to time during late 2003 and 2004, but Copier did not declare default nor accelerate the debt. Copier did not declare Communications in default until the spring of 2005. Communications was delinquent $115,841.24 to Copier under the note and $19,339.44 to S.A. Enterprises for the lease. Keith Gauer, Copier's attorney at the time, sent a letter of default notice to Communications on March 17, 2005, giving Communications thirty days to cure the default.

[¶8.]     Communications did not respond to the notice of default and Gauer learned from Communications' bankruptcy attorney, Clair Gerry, that Communications would be unable to cure the default. Gauer did a UCC search and found First American had filed a UCC-3 assigning the Copier/Communications UCC-1 to Farmers Bank. Gauer spoke with First American regarding the assignment and they discovered an error had occurred. First American sent a letter to Farmers Bank on May 12, 2005, which explained that the UCC-3 assignment purportedly assigned to Farmers Bank in connection with the Farmers Bank refinancing was in error because the Copier/Communications UCC-1 was only collaterally assigned and did not relate to a loan transaction between First American and Communications. First American requested that Farmers Bank correct the mistakenly filed assignment of the UCC-3. Farmers Bank replied that it relied on First American's representations when it decided to extend credit to Communications and pay Communications' outstanding debt to First American. Therefore, it would only correct the filing if First American paid Communications' outstanding debt of $339,123.26 plus per diem interest.

[¶9.]     In the meantime, Communications' business began a rapid downhill slide. Employees quit and began working for a competitor. In early May 2005, the South Dakota Department of Revenue and Regulation threatened to close Communications for failure to pay sales tax. Copier alleges that it wanted to take over the business in order to run it until another buyer could be found. It argues that due to the confusion regarding the first position security interest, it was unable to do so. Ultimately, Communications surrendered its assets to Copier on June 15,

2005. On August 25, 2005, Copier's attorney at this time, Roger Damgaard, noticed all Communications' creditors that Copier was going to auction Communications' assets on September 6, 2005. The auction net proceeds, $11,693.93, were deposited in a trust account pending the resolution of the priority dispute.

[¶10.]     On July 27, 2005, First American brought a declaratory judgment action against Farmers Bank to determine which party held the first position security interest. Copier and S.A. Enterprises intervened in the action and brought various causes of action against each bank. Copier's amended intervenor complaint alleged eleven counts. Against First American, Copier alleged: 1) breach of express or implied contract; 2) breach of contract – implied covenant of good faith and fair dealing; 3) breach of fiduciary duty; 4) negligence; 5) conversion; 6) violation of SDCL 57A-9-509 and 57A-9-625; 7) unjust enrichment and constructive trust; and 8) declaratory judgment. Copier brought the following claims against Farmers Bank: 1) unjust enrichment and constructive trust; 2) negligence; 3) conversion; 4) violations of SDCL 57A-9-509 and SDCL 57A-9-625; and 5) declaratory judgment. First American filed a third party complaint which alleged S.A. Enterprises and its owner, Hamilton, were in default on the loan from First American to S.A. Enterprises for some real property owned by S.A. Enterprises.[3]

[¶11.]     Farmers Bank filed an answer to Copier's amended complaint and cross-claimed against First American. First American answered Copier's complaint and brought cross-claims against Farmers Bank. On August 18, 2006, all parties

---

3.     The real property is the building that Communications leased from S.A. Enterprises.

moved for partial summary judgment.[4]  After a hearing, the circuit court granted First American's and Farmers Bank's motions for partial summary judgment against Copier except for Count VII (Unjust Enrichment and Constructive Trust). It denied Copier's motion for partial summary judgment regarding all issues except Count XI (Declaratory Judgment).[5]  The circuit court found that Copier had a first position security interest in Communications' assets "that was at all times superior to the interests of" First American and Farmers Bank.  Copier's motion for partial summary judgment against Farmers Bank was denied except that the circuit court

4.    First American brought a partial summary judgment motion against Copier on the claims for:  breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, negligence, conversion and the violations of the UCC (SDCL 57A-9-509 and SDCL 57A-9-625), unjust enrichment and constructive trust and declaratory judgment.  Farmers Bank brought a motion for summary judgment against Copier on the claims for declaratory judgment, unjust enrichment and constructive trust, negligence, conversion and the violation of the UCC.  Copier brought a partial summary judgment motion against First American on Copier's issues of breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, conversion and the violations of the UCC.  Copier also brought a partial summary judgment motion against Farmers Bank on the claims of conversion and violations of the UCC.

5.    Farmers Bank and First American made cross-motions for summary judgment.  Farmers Bank brought a motion for summary judgment against First American for breach of contract and requested First American pay back the money Farmers Bank paid to First American for the assignment of its financing statement and filing date.  First American brought a partial motion for summary judgment against Farmers Bank for dismissal of the counterclaims of constructive fraud, implied covenant of good faith and fair dealing, failure of consideration, negligent misrepresentation, mistake of fact and rescission.  The circuit court granted First American's motion for summary judgment in part and dismissed the claims for failure of consideration and mistake of fact, but denied the motion in all other respects. The circuit court denied Farmers Bank's motion for summary judgment.  The issues regarding these claims are not on appeal.

declared Copier was entitled to the $11,693.93 in proceeds from the sale of

Communications' assets held in trust.[6]

[¶12.]     In order to appeal, Copier motioned for certification and entry of

judgment as provided for in SDCL 15-6-54(b).  The parties stipulated to the motion

and the circuit court entered a final judgment.  Copier appeals the circuit court's

decision and raises three issues.  We restate the issues as:

1.     Whether the circuit court correctly held that First American and Farmers Bank had no duty to Copier under the circumstances and properly granted summary judgment on the negligence claims.

2.     Whether the circuit court correctly granted summary judgment on Copier's conversion claim against Farmers Bank.

## STANDARD OF REVIEW

[¶13.]     Our standard of review of a circuit court's grant of summary judgment

is well settled:

> [W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.  The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.  The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists.  Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.  If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

Wojewski v. Rapid City Reg'l Hosp., Inc., 2007 SD 33, ¶12, 730 NW2d 626, 631

(quoting Read v. McKennan Hosp., 2000 SD 66, ¶8, 610 NW2d 782, 784) (additional

---

6.     At the time of this judgment, the proceeds had already been released to Copier.

citations omitted). "Summary judgment is proper in negligence cases if no duty exists as a matter of law." Stone v. Von Eye Farms, 2007 SD 115, ¶6, 741 NW2d 767, 770 (quoting Bordeaux v. Shannon County Schools, 2005 SD 117, ¶11, 707 NW2d 123, 126). Whether a duty exists is a question of law reviewed de novo. Casillas v. Schubauer, 2006 SD 42, ¶14, 714 NW2d 84, 88 (citing *Bordeaux*, 2005 SD 117, ¶11, 707 NW2d at 126).

[¶14.]     **1.     Whether the circuit court correctly held that First American and Farmers Bank had no duty to Copier under the circumstances and properly granted summary judgment on the negligence claims.**

[¶15.]     Copier argues that First American and Farmers Bank had a duty to act for the benefit of Copier and to refrain from "creating a dispute regarding Copier's security interest[.]" The circuit court concluded that neither First American nor Farmers Bank had a duty with regard to Copier. Therefore, the circuit court granted summary judgment on this issue in favor of the banks.

[¶16.]     In determining whether a duty exists, we examine whether "a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *Casillas*, 2006 SD 42, ¶14, 714 NW2d at 88 (citing Estate of Shuck, 1998 SD 32, ¶8, 577 NW2d 584, 586). Additionally, a duty can be created by common-law or statute. Hendrix v. Schulte, 2007 SD 73, ¶7, 736 NW2d 845, 847 (citing Kuehl v. Horner Lumber Co., 2004 SD 48, ¶11, 678 NW2d 809, 812). Duty is also based upon foreseeability. As we have explained:

> Foreseeability may also create a duty. Although foreseeability is
> a question of fact in some contexts, foreseeability in defining the
> boundaries of a duty is always a question of law. Foreseeability

> in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation.

*Kuehl*, 2004 SD 48, ¶10, 678 NW2d at 812 (quoting Braun v. New Hope Twp., 2002 SD 67, ¶9, 646 NW2d 737, 740).  Therefore, "[w]hether a common-law duty exists depends on the foreseeability of injury."  Luke v. Deal, 2005 SD 6, ¶19, 692 NW2d 165, 170 (quoting Poelstra v. Basin Elec. Power Co-op., 1996 SD 36, ¶16, 545 NW2d 823, 826).

## First American

[¶17.]        Copier argues that it was clearly foreseeable that injury would occur when First American erroneously purported to assign a first position security interest, which rightfully belonged to Copier, to Farmers Bank.  First American argues:  1) that the UCC does not allow these negligence actions and 2) foreseeability does not create a duty for First American.  First American argues that summary judgment was proper because no duty existed.

[¶18.]        First, the UCC does not preclude a negligence action.  Section 1-103 of the UCC [SDCL 57A-1-103(b))] provides:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

We have previously noted that "[t]he U.C.C. provides that our common-law is effective in commercial transactions unless specifically displaced by a particular Code section."  Maryott v. First Nat'l Bank of Eden, 2001 SD 43, ¶20, 624 NW2d 96, 103.  First American does not provide this Court with any explicit provision of the

UCC that displaces common-law negligence. Therefore, First American's first argument fails.

[¶19.] Second, we examine whether a duty was created by foreseeability. Specifically, we determine whether it was foreseeable to First American that purporting to assign a first position security interest in Communications' business assets would harm Copier. We conclude it was not foreseeable; therefore, First American did not have a duty to Copier.

[¶20.] As First American points out in its brief, at the time it purported to assign a first position security interest, it could not foresee that Farmers Bank would refuse to acknowledge Copier's rightful first security interest. *See* Peterson v. Spink Elec. Co-op, Inc., 1998 SD 60, ¶14, 578 NW2d 589, 592 (quoting Wildeboer v. South Dakota Jr. Chamber of Commerce Inc., 1997 SD 33, ¶14, 561 NW2d 666, 669) ("[N]o one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen.")) (additional citation omitted). Farmers Bank argued that it had the first position security interest until immediately before the summary judgment hearing. In contrast, First American agreed with Copier that Copier had the first security interest when the mistake was first discovered. Copier argues that First American or "any bank should reasonably foresee that its own misunderstanding and misrepresentations to third parties, including lenders, regarding the nature of its interest in collateral might result in injury to the secured party with the true first position in those assets." In support of this argument, Copier cites *Brandriet v. Norwest Bank of South Dakota, N.A.*, 499 NW2d 613 (SD 1993) and *First Western*

*Bank, Sturgis, v. Livestock Yards Co.*, 444 NW2d 387 (SD 1989). However, these cases do not provide sufficient support that foreseeability created a duty for First American.

[¶21.]     In *Brandriet*, Brandriets had two mortgages with Norwest Bank at 12.5% and 13.75% when they learned that they could apply for a United States Department of Veterans Affairs (VA) loan at 8.5% that would replace the two higher rate loans. 499 NW2d at 614. They intended to apply for the VA loan at a different bank when the vice-president of business banking informed Brandriets that Norwest was a "certified" VA lender and that Norwest could provide the VA loan. *Id.* at 615. After applying, the loan officer rejected Brandriets' application, and without forwarding the application to the VA, told them that the VA had rejected the loan due to insufficient income. By the time Brandriets learned the truth, the interest rate on the VA loan had risen to over 10%.

[¶22.]     At trial, Brandriets alleged negligent processing, fraudulent misrepresentation, and negligent misrepresentation. *Id.* at 616. On appeal, Norwest Bank challenged the jury's verdict regarding sufficiency of the evidence on negligent and fraudulent misrepresentation and negligent processing, the jury instruction regarding a confidential relationship, and punitive damages. *Id.* at 617. We affirmed the jury verdict and damages award. We noted that there were several misrepresentations of fact, such as that Norwest was a "certified" VA lender and that the VA rejected the application, both of which supported the jury's verdict. *Id.* at 616-17. Moreover, Brandriets relied on these misrepresentations to their detriment.

[¶23.] Additionally, Norwest Bank challenged the jury instruction that a confidential relationship existed between the bank and Brandriets. *Id.* at 617-18. We held that the lower court did not err in finding a confidential relationship existed due to the facts and circumstances of the case. We noted that the "Brandriets placed their trust and confidence in Norwest to process the VA loan; Norwest officials were supposed to be acting with the Brandriets' interest in mind. Where such an exchange of trust and action exists, a confidential relation also exists." *Id.* at 618 (citing Schwartzle v. Dale, 74 SD 467, 471, 54 NW2d 361, 363 (1952)).

[¶24.] In *First Western Bank*, the bank loaned money to Madden, the sole general partner of the partnership, purportedly on behalf of the partnership. 444 NW2d at 388. The partnership was the holding company for Madden's Livestock Market (Livestock Corporation). Livestock Corporation was run by Madden. The bank was aware of the different partnership and corporation owners, responsibilities, holdings and debts. Madden did not use the money for partnership business, but instead deposited the money into a bank in Hawaii and a Livestock Corporation account.

[¶25.] Upon default, the bank sought to reform the legal description of the mortgage and foreclose upon the mortgage given by Madden on behalf of the partnership. *Id.* The limited partners counterclaimed alleging the bank was negligent in loaning Madden money on behalf of the partnership. The circuit court found the loan was made on behalf of the partnership and granted summary judgment in favor of the bank. We reversed the circuit court's grant of summary

judgment and concluded there were genuine issues of material fact whether the bank knew or should have known the loan proceeds were for the Livestock Corporation and not the partnership. *Id.* at 390. These genuine issues of fact precluded summary judgment.

[¶26.] Both cases are distinguishable from the present case. There is not a confidential relationship between First American and Copier. This was an arms length business transaction, not a customer applying for a VA loan. First American took an interest in the Copier/Communications UCC-1 to protect its interest in the $650,000.00 loan to S.A. Enterprises.

[¶27.] Furthermore, under the UCC, First American had the right to assign the UCC-3 (which noted the interest in the Copier/Communications UCC-1). Hamilton, as the owner of S.A. Enterprises, signed the UCC-3 authorizing First American as the assignee. SDCL 57A-9-509(e)[7] authorizes First American to file amendments. The security agreement provided that the interest secured current and any future indebtedness.[8] Moreover, the security agreement was still in effect. The security agreement provided that the agreement would be in effect "until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower."

---

7. SDCL 57A-9-509(e) provides that "[i]f there is more than one secured party of record for a financing statement, each secured party of record may authorize the filing of an amendment under subsection (d)."

8. Although the language in the security agreement provided for future loans, the parties agree there were none contemplated at the time of executing the agreement.

[¶28.]         "Issues of negligence . . . and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury." Luther v. City of Winner, 2004 SD 1, ¶24, 674 NW2d 339, 348 (citation omitted). "It is only when reasonable people can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs." Steffen v. Schwan's Sales Enterprises, Inc., 2006 SD 41, ¶26, 713 NW2d 614, 622 (additional citation omitted) (Zinter, J., concurring in part and dissenting in part). While First American may have told Farmers Bank it held a first position security interest, it could only assign whatever interest it actually held.[9] Copier was the first position security interest the whole time and Copier's alleged damages were not proximately caused by First American's assignment of its interest to Farmers Bank. Despite Farmers Bank's claim that it was in first position (due to First American's misrepresentation to Farmers Bank), Communications relinquished its business assets to Copier and Copier auctioned off the assets without impediment from either First American or Farmers Bank. As Copier was always in the first position, it could have seized the assets immediately, but it failed to do so. "Only when legal minds cannot differ as to the failure of proximate cause is judgment as a matter of law . . . appropriate." Maryott, 2001 SD 43, ¶11, 624 NW2d at 101 (citing Walther v. KPKA Meadowlands Ltd. Partnership,

---

9.     Whether First American made fraudulent or negligent misrepresentations to Farmers Bank is not an issue in this appeal as summary judgment on this issue was denied below. Assuming First American owed a duty to Farmers Bank, it does not translate into a duty to Copier, despite Copier's attempt to argue so. See Palsgraff v. Long Island R. Co., 162 NE 99, 101 (NY 1928).

1998 SD 78, ¶54, 581 NW2d 527, 537). Here, Copier's damages were not proximately caused by First American's actions.

[¶29.] Given these facts and circumstances, First American did not have a legal duty to act for the benefit of Copier and First American's acts did not proximately cause any alleged injury suffered by Copier as a matter of law. Therefore, summary judgment was properly granted.

***Farmers Bank***

[¶30.] Copier alleges that "once Farmers Bank was made expressly aware that it had received an invalid assignment of a security interest in the Communications assets and was asked to cooperate in correcting the situation, it had a duty to do so." Copier also claims "[i]t was clearly foreseeable to Farmers Bank that Copier might be damaged by the bank's failure to cooperate in correcting the record and removing the dispute over Copier's security interest." Copier also asserts that "[b]ecause there are, at a minimum, disputed material facts on the question of whether Farmers Bank breached a duty to Copier and the damages resulting from that breach," the circuit court should be reversed.

[¶31.] Like the negligence claim against First American, Copier points to no statute or case law which creates a duty on the part of Farmers Bank. *See* Delka v. Continental Cas. Co., 2008 SD 28, ¶17, 748 NW2d 140, 148 (noting that "we have been directed to nothing in the statutes or common law . . . imposing . . . a . . . duty . . . to potential employees/enrollees . . . that would support [plaintiff's] claim of negligence."). Instead, Copier claims it was clearly foreseeable an injury might arise and therefore, Farmers Bank had a duty.

[¶32.]     Foreseeability does not provide a duty in this instance. It is not foreseeable that by claiming to hold the first position security interest, Copier would be injured. Farmers Bank claimed the first position for over a year, only abandoning that claim at the summary judgment hearing. However, as noted above, Communications relinquished its business assets to Copier long before that and Copier auctioned off the assets without impediment from either First American or Farmers Bank. Furthermore, as a secured party of record, SDCL 57A-9-509(e) allowed Copier to file a termination statement and the alleged "cloud on the title" would have disappeared.

[¶33.]     Moreover, Farmers Bank had the right to take a reasonable amount of time to determine its position as it claims it paid First American over $200,000.00 for the assignment. While normally reasonableness would be a jury determination, under the facts of this case, Farmers Bank did not unreasonably delay as a matter of law. In this case, the business was delinquent and insolvent in its obligations for over a year before going defunct very quickly. Despite knowing there were delays in payment for over a year, Copier did not declare default until March 17, 2005, and even then, Communications was given thirty days to cure. Thirty days later, the default was not cured and the business was in operations for only fifteen more days, until May 2, 2005. *After the last day Copier was in operation*, Gauer on behalf of Copier, wrote a letter indicating Copier was unable to determine who had the first priority. Moreover, as early as May 10, 2005, Gauer concluded that Communications could not survive as a going concern. It was not until May 12, 2005, that First American concluded the UCC-3 was ineffective and Farmers Bank

was then notified. During this time, Farmers Bank held the theory it was in first secured position as stated by First American. However, under these facts, an unreasonable amount of time had not passed; unfortunately, during this short time the business lost its value, but that does not create a duty or liability on behalf of Farmers Bank. Communications already went out of business and Gauer already determined the business would not survive as a going concern *before* Farmers Bank was notified of a problem with the priorities and security interests.

[¶34.] "No one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." Poelstra v. Basin Elec. Power Co-op, 1996 SD 36, ¶18, 545 NW2d 823, 827 (citations omitted). Moreover, foreseeability "relates to the time when the act or omission occurred." On May 12, 2005, the date of the letter to Farmers Bank, it was not foreseeable that Copier would suffer injury for inability to sell the business as a going concern.

[¶35.] At the time Farmers Bank received the notice of potential priority problems, the Department of Revenue had already threatened to shut the business down for failure to pay sales tax, the employees had quit and went to work for a competitor, and Copier (through their attorney, Gauer) had acknowledged that Communications could not survive as a going concern. Therefore, Farmers Bank had only been aware of the situation for a few days.[10] That period of time is not unreasonable as a matter of law.

---

10. Even if Farmers Bank was aware of Copier's default and failure to cure, only fifteen days had passed from the deadline to cure, which was April 17, 2005,

(continued . . .)

[¶36.]     Under these factual circumstances, there is no showing that the circuit court erred in granting summary judgment in favor of Farmers Bank.  We affirm.

[¶37.]     **2.     Whether the circuit court correctly granted summary judgment on Copier's conversion claim against Farmers Bank.**

[¶38.]     Copier claims Farmers Bank should be held liable for conversion.  "Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right."  Chem-Age Industries, Inc. v. Glover, 2002 SD 122, ¶20, 652 NW2d 756, 766 (additional citation omitted).  According to the South Dakota Pattern Jury Instructions, Copier must prove the following elements in order to prevail on conversion:  (1) Copier owned or had a possessory interest in the property; (2) Copier's interest in the property was greater than Farmers Bank; (3) Farmers Bank exercised dominion or control over or seriously interfered with Copier's interest in the property; and (4) such conduct deprived Copier of its interest in the property.  *See* SD Pattern Jury Instructions (civil) 170-30-2.  Copier's conversion claim must fail because Copier was never deprived of its first position security interest in Communications' business assets.  It simply perceived or imagined it was deprived of its first position.

[¶39.]     The circuit court found that "Copier was never deprived of its first perfected position in the business assets of Communications."  Moreover, all parties

_____

(. . . continued)
        and complete failure of the business on May 2, 2005.  The necessity of
        Farmers Bank acting quickly had already dissipated.

agree that Copier is, and at all times was, in the first perfected position. Therefore, the conversion claim against Farmers Bank fails as a matter of law as Copier was never deprived of its interest.

[¶40.] Under the facts of this case, we conclude that the circuit court did not err in determining as a matter of law that neither bank has liability to Copier because: 1) there was no violation of the UCC provisions – First American had the right to file amendments; 2) there is no statute or case law that extends a duty under the facts of this case; 3) Copier is bound to know its own position that it was always in first position security interest; 4) it was not foreseeable to First American that Farmers would refuse to acknowledge Copier's superior security interest for almost two years after it was told of the claimed mistake; 5) Farmers had the right to take a reasonable amount of time to determine its position and any damages or loss of value had already occurred before a reasonable amount of time expired; and 6) Copier's damages, if any, were not proximately caused by either banks' actions, but by its own delay in asserting its first position security interest. The circuit court correctly ruled Farmers Bank was not liable for conversion as Copier was always in first secured position and therefore, was never deprived of its interest.

[¶41.] Copier was in reality a competing lender with respect to the same collateral. In the world of commercial finance, it is always foreseeable that there will be conflicting claims to collateral and that all secured parties will assert whatever rights they may have in any collateral. They have no duty to do otherwise. Therefore, in the absence of any authority, it is an incredible stretch under these circumstances to claim either bank has a duty to a competing lender in

the same collateral. For all of the foregoing reasons, we affirm the circuit court's grant of summary judgment in all respects.

[¶42.]     Affirmed.

[¶43.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶44.]     KONENKAMP and MEIERHENRY, Justices, dissent on Issue 1.


KONENKAMP, Justice (dissenting on Issue 1).

[¶45.]     Midwest Copier asserts that the circuit court erred in declaring that First American Bank and Farmers Bank were not negligent as a matter of law. In affirming summary judgment, this Court rules there was no legal forseeability. But it was certainly foreseeable that the true first position secured party could be injured when First American erroneously assigned an ersatz first security interest to a third party. It was equally foreseeable that the true first position secured party could be injured when Farmers Bank, made aware of the error, refused to recognize its junior position. Because injury was foreseeable, First American and Farmers Bank each owed a duty to Midwest Copier.

[¶46.]     The existence of a common law duty depends on the foreseeability of injury. Luke v. Deal, 2005 SD 6, ¶19, 692 NW2d 165, 170 (quoting Poelstra v. Basin Elec. Power Co-op., 1996 SD 36, ¶16, 545 NW2d 823, 826). Foreseeability of injury is examined at the time the allegedly negligent act occurred. *Poelstra*, 1996 SD 36, ¶18, 545 NW2d at 827. This is distinguished from foreseeability as it relates to the issue of proximate cause, which is examined at the time the damage is done. *Id.*; *see also* Peterson v. Spink Elec. Co-op., Inc., 1998 SD 60, ¶15, 578 NW2d 589, 592.

[¶47.]     When the Court declares that First American owed no duty to Midwest Copier, it fails to distinguish between "[f]oreseeability in the 'duty' sense" and "foreseeability in fact issues bearing on negligence (breach of duty) and causation." *See* Kuehl v. Horner (J.W.) Lumber Co., 2004 SD 48, ¶10, 678 NW2d 809, 812 (quoting Braun v. New Hope Twp., 2002 SD 67, ¶9, 646 NW2d 737, 740). Foreseeability in the duty sense asks: is it foreseeable that an injury would occur to the true first position secured party when First American purported to assign its false first position security interest to a third party? In the Court's view, "[First American] could not foresee that Farmers Bank would refuse to acknowledge [Midwest] Copier's rightful first security interest." *See supra* ¶20. This conclusion, however, considers facts that bear on the issue of causation, not whether a duty exists. *Farmers Bank's* refusal to acknowledge Midwest Copier's first security interest is irrelevant to whether it was foreseeable that Midwest Copier would be injured by *First American's* negligent act. Similarly, Midwest Copier's failure to request a termination statement from First American of its UCC filing and First American's right to assign whatever interest it had are facts unrelated to the determination of whether First American owed a duty to Midwest Copier.

[¶48.]     Foreseeability of injury and whether a duty exists is properly examined at the time First American erroneously assigned a first position secured interest to a third party. There is no dispute that First American misrepresented to a third party that First American had a first position security interest when in fact Midwest Copier had such position. This allegedly negligent act could certainly cause injury to the true first position secured party, and therefore, a duty existed.

[¶49.]     Nevertheless, the Court holds that as a matter of law Midwest Copier's damages were not proximately caused by First American's actions. It reasons that because First American could only assign whatever rights it actually held, mistakenly assigning its non-existent first secured position to a third party could not have caused Midwest Copier's damages. In so holding, the Court declares that legal minds could not differ on the conclusion that First American's actions did not proximately cause Midwest Copier's damages. *See supra* ¶28.

[¶50.]     Proximate cause is a question for the jury except in the "rarest of cases." Bauman v. Auch*, 539 NW2d 320, 325 (SD 1995); *see also* Tipton v. Town of Tabor, 1997 SD 96, ¶68, 567 NW2d 351, 374 (Sabers, J., dissenting) ("It is axiomatic that questions of breach, proximate cause, and damages are resolved by the jury in all but the rarest of cases."). "We are obliged to view the facts in a light most favorable to the nonmoving party." Smith *ex rel*. Ross v. Lagow Const. & Dev. Co., 2002 SD 37, ¶15, 642 NW2d 187, 191 (citing Pickering v. Pickering, 434 NW2d 758, 760 (SD 1989)). Here, Midwest Copier alleges that because First American breached its duty, Midwest Copier was prevented "from quickly stepping in to preserve the viability of the business." Midwest Copier further claims that because of First American's actions, "Communications was stripped of its value as an ongoing enterprise, rendering Midwest Copier's secured position virtually worthless." Viewing the evidence in a light most favorable to Midwest Copier, the dispute caused by First American's misrepresentation could have caused Midwest Copier's damages.

[¶51.]     It is important to note that imposing a duty on First American does not end the matter. The issues of breach, proximate cause, and damages are still hurdles Midwest Copier must overcome. The question on appeal is only whether a duty exists: was an injury foreseeable at the time of the allegedly negligent act? The answer to that question against First American is yes, and the circuit court erred when it granted First American summary judgment on Midwest Copier's negligence claim.

[¶52.]     The court similarly erred when it granted summary judgment in favor of Farmers Bank on Midwest Copier's negligence claim. It was foreseeable to Farmers Bank that the true first position secured party could be injured when Farmers Bank, informed that its interest was not superior, refused to acknowledge its junior interest. The Court contends that no duty existed because Farmers Bank had a right to determine its true position as a secured party. The Court further finds as a matter of law that the amount of time Farmers Bank took to determine its position was reasonable.

[¶53.]     Whether a duty exists does not depend on the reasonableness of Farmers Bank's conduct. Nor does the existence of a duty depend on what actions *Midwest Copier* took with respect to the default of Communications, when Communications actually relinquished its assets, what in fact caused Midwest Copier's damage, or what notice the Department of Revenue sent regarding the demise of Communications. *See Kuehl*, 2004 SD 48, ¶10, 678 NW2d at 812 ("[f]oreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation") (quoting *Braun*, 2002 SD 67,

¶9, 646 NW2d at 740).  Duty is determined by asking whether injury was foreseeable at the time the negligent act occurred.  Here, the allegedly negligent act occurred when Farmers Bank was informed that its interest in the assets of Communications was junior to Midwest Copier's and Farmers Bank continued to assert its position as the first secured party.  It was foreseeable that this allegedly negligent conduct could injure the true first position secured party, Midwest Copier. Therefore, a duty exists and summary judgment was improperly granted on Issue 1.

[¶54.]      MEIERHENRY, Justice, joins this dissent.